OPINION
{¶ 1} Respondent-Appellant, Ronald Farr, appeals the judgment of the Seneca County Court of Common Pleas, Domestic Relations Division, which granted a domestic violence civil protection order ("CPO") on the behalf of Petitioners-Respondents, Vickey Brubaker, her and Farr's two minor children, T.F. and K.F., as well as on the behalf of Brubaker's step-child, T.B. On appeal, Farr asserts that the trial court erred in issuing a CPO on the behalf of T.F. and K.F. when there was no substantial credible evidence supporting the same. Finding that there was substantial credible evidence, we affirm the judgment of the trial court.
 {¶ 2} On August 15, 2005, Brubaker filed a petition for a CPO under R.C. 3113.31, which noted that Brubaker and Farr are married. Brubaker sought relief on her own behalf and on the behalf of her step-child, T.B. Additionally, Brubaker sought relief on behalf of her and Farr's two minor children, T.F. and K.F. Further, Brubaker requested that the court issue an exparte protection order under R.C. 3113.31(D) and (E). On the same day, the trial court granted Brubaker's ex parte CPO and ordered a full hearing to occur on August 24, 2005.
 {¶ 3} On August 16, 2005, the Seneca County Sheriff's Department served Farr with the ex parte CPO.
 {¶ 4} At the full hearing, the following testimony was heard. Detective David Pauley of the Tiffin Police Department was called to testify on behalf of Brubaker. Detective Pauley testified that T.B. had alleged that on several occasions in the early hours of the morning, Farr would go into the TV room where T.B. would be sleeping on the couch, sit down next to her, and rub her bare bottom and bare vagina. Additionally, T.B. alleged that Farr had also inserted his finger into her vagina.
 {¶ 5} Detective Pauley testified that he had made multiple attempts to contact Farr to inquire about these allegations, but was unsuccessful. However, Detective Pauley noted that Farr voluntarily came to the Tiffin Police Department on August 11, 2005.
 {¶ 6} Detective Pauley testified that Farr admitted to rubbing T.B.'s bare bottom and to pinching and patting T.F. and K.F.'s clothed bottoms. Detective Pauley also testified that Farr admitted that he on occasion would slip and rub her vaginal area, but when he did he would immediately pull his hand away when he felt her vaginal lips. Detective Pauley also noted that Farr stated that he touched his children because it relaxed him.
 {¶ 7} Next, Brubaker called Erica Cleveland, a social worker with the Seneca County Department of Job and Family Services, to testify on her behalf. Ms. Cleveland testified that she had been helping Brubaker find emergency shelter and had provided Brubaker with other services, because Brubaker and the three minor children were unable to return to their family home.
 {¶ 8} Next, Farr was called to testify as if on cross examination. Farr admitted that he was the father of T.F. and K.F., but invoked his Fifth Amendment right on the other questions asked of him.
 {¶ 9} Finally, Brubaker testified on her own behalf. Brubaker testified that she was seeking a CPO because of the allegations of sexual abuse of T.B. by Farr. Brubaker also testified that she feared for her safety and the safety of T.B., T.F., and K.F. Brubaker also stated that a CPO was necessary for her and the three children because she "[did]n't know what [Farr's] capable of." (Hearing Tr. p. 23). Brubaker continued that in the past, Farr had struck her.
 {¶ 10} On cross examination, Brubaker testified that within the four months prior to the hearing, she remained in the household and had had sexual relations with Farr multiple times.
 {¶ 11} On redirect examination, Brubaker noted that she did not know what Farr was capable of and feared that he might hit someone in the household. Additionally, Brubaker testified that she left the marital residence because of the alleged sexual abuse of T.B. and the violence Farr had exerted on her and T.B. Finally, Brubaker testified that she witnessed Farr shove T.F. at a restaurant, which caused T.F. to trip over his feet, because T.F. refused to do what Farr had asked him to do.
 {¶ 12} At the conclusion of the hearing, the trial court granted the CPO with respect to T.B. for five years and took the other matters under advisement.
 {¶ 13} In its journal entry dated August 25, 2005, the trial court granted the CPO with respect to Brubaker and the three minor children. The trial court also found by a preponderance of the evidence:
(1) that the petitioner or petitioner's family or householdmember(s) are in danger of or have been a victim of domesticviolence, as defined in Ohio Revised Code 3113.31(A), committedby respondent; and (2) the following orders are equitable, fair,and necessary to bring about a cessation or prevention ofdomestic violence against the family or household member(s) namedin the petition.
(Aug. 25, 2005, Journal Entry).
 {¶ 14} Farr appeals this judgment, presenting the following assignment of error for our review:
THE TRIAL COURT ERRED IN ISSUING A PROTECTION ORDER FOR AND ASTO THE MINOR CHILDREN [T.F.] AND [K.F.] WHEN THERE WAS NOSUBSTANTIAL CREDIBLE EVIDENCE SUPPORTING SAME.
 {¶ 15} On appeal, Farr asserts that the trial court erred in issuing the CPO for the benefit of his two minor children, T.F. and K.F. Specifically, Farr asserts that there was no substantial credible evidence to support the CPO for the benefit of T.F. and K.F. We disagree.
R.C. 3113.31 provides in pertinent part:
(A) As used in this section:
 (1) "Domestic violence" means the occurrence of one or more ofthe following acts against a family or household member:
* * *
(b) Placing another person by the threat of force in fear ofimminent serious physical harm or committing a violation of [R.C.2903.211 or 2911.211].
 (c) Committing any act with respect to a child that wouldresult in the child being an abused child, as defined in [R.C.2151.031].
* * *
(3) "Family or household member" means any of the following:
 (a) Any of the following who is residing with or had residedwith the respondent.
 (i) A spouse, a person living as a spouse, or a former spouseof the respondent;
 (ii) A parent.