OPINION
{¶ 1} Appellant Brian Fugate ("Brian") appeals from the July 16, 2007 Order of Protection of the Common Pleas Court of Auglaize County, Ohio, granting appellee, Nina Fugate ("Nina"), a Domestic Violence Civil Protection Order against Brian pursuant to R.C. 3113.31. The Order prevents Brian from having contact with his son, Alexander James Fugate ("Alexander") DOB 3/6/06, and grants temporary parenting rights to Nina. The order also prevented Brian from having contact with Deenah Bohon ("Deenah") DOB 2/23/05, Nina's daughter from a prior relationship. We note that Nina was not protected under this order.
 {¶ 2} After being married for approximately one year, Nina and Brian separated on June 22, 2007. The divorce is currently pending in Montgomery County, Ohio.[1] Alexander was the only child born of the marriage. Deenah had also resided with Brian and Nina.
 {¶ 3} When the parties separated, Nina moved herself and Deenah out of the marital residence, which had been Brian's residence prior to the marriage. When Nina moved out, she left Alexander in Brian's custody. We note that when Nina left the marital residence, her father, sister, and other family members were *Page 3 
at the residence as well as some of Brian's family. Nina was able to take her clothing and her daughter's clothing from the home. Family members who were present describe the situation as calm and orderly. According to Brian's brief, Nina then went to stay with an old boyfriend in Auglaize County.[2]
 {¶ 4} On July 9, 2007 Nina filed for a Civil Protection Order ("CPO") in Auglaize County to prevent Brian from having contact with Alexander. Nina also filed for an ex parte civil protection order.
 {¶ 5} On July 9, 2007 the court issued a Journal Entry denying the ex parte CPO. The court reasoned that it could not find that there existed an immediate and present danger of domestic violence. The matter was set for a full hearing on July 16, 2007. On July 10, 2007 Nina amended the petition to request a CPO for both Alexander and Deenah.
 {¶ 6} On July 16, 2007 a hearing was held and the CPO was granted prohibiting Brian from having contact with Alexander or Deenah for one year.
 {¶ 7} Brian now appeals asserting six assignments of error.
 ASSIGNMENT OF ERROR I THE TRIAL COURT ERRED BY GRANTING A CIVIL PROTECTION ORDER BECAUSE THERE WAS NO EVIDENCE THAT ANY DOMESTIC VIOLENCE OCCURRED OTHER THAN SELF-SERVING STATEMENTS BY APPELLEE. *Page 4 
 ASSIGNMENT OF ERROR II THE TRIAL COURT ERRED BY GRANTING A CIVIL PROTECTION ORDER BECAUSE IT'S [SIC] DECISION IS AGAINST THE BURDEN OF PROOF AND THE WEIGHT OF THE EVIDENCE, WHICH IS BY A PREPONDERANCE OF THE EVIDENCE.
 ASSIGNMENT OF ERROR III THE TRIAL COURT ERRED BECAUSE APPELLEE FAILED TO SATISFY THE STATUTORY ELEMENTS OF DOMESTIC VIOLENCE AGAINST A CHILD UNDER R.C. 3113.31, R.C. 2151.031, AND R.C. 2919.22.
 ASSIGNMENT OF ERROR IV THE TRIAL COURT ERRED BY GRANTING A CIVIL PROTECTION ORDER BECAUSE IT FAILED TO RECOGNIZE APPELLEE'S OWN NEGLECT OF THE CHILD BY LEAVING HIM AND NOT ATTEMPTING ANY COMMUNICATION WHATSOEVER FOR THREE TO FOUR WEEKS.
 ASSIGNMENT OF ERROR V THE TRIAL COURT ERRED BY GRANTING A CIVIL PROTECTION ORDER BECAUSE IT FAILED TO RECOGNIZE APPELLEE'S FORUM SHOPPING TO GIVE HER A MORE FAVORABLE RESULT.
 ASSIGNMENT OF ERROR VI THE TRIAL COURT ERRED BY GRANTING A CIVIL PROTECTION ORDER BECAUSE IT FAILED TO RECOGNIZE APPELLEE'S OTHER MOTIVE OF USING A DOMESTIC VIOLENCE ALLEGATION FOR HER BENEFIT IN A FUTURE CUSTODY HEARING.
 {¶ 8} Initially, we note that the Appellate Rules state: "if an appellee fails to file his brief within the time provided by these rules, or within the time as extended, he will not be heard at oral argument * * * and in determining the *Page 5 
appeal, the court may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action." App.R. 18(C); State v.Young, 3rd Dist. No. 13-03-52, 2004-Ohio-540. In the instant case Nina failed to submit a brief to this court. Accordingly, we elect to accept the statement of facts and issues as presented by Brian, the appellant, as correct pursuant to App.R. 18(C).
 {¶ 9} For ease of discussion, we elect to address Brian's first two assignments of error together. In his first and second assignments of error, Brian argues that the decision of the trial court to grant the CPO was against the weight of the evidence because only Nina's self-serving statements were introduced to support the CPO.
 {¶ 10} When granting a protection order, the trial court must find that petitioner has shown by a preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence. Felton v. Felton (1997), 79 Ohio St.3d 34,679 N.E.2d 672, 1997-Ohio-302, paragraph two of the syllabus. Moreover, the decision by a trial court to issue a CPO should be "based upon the facts and circumstances before it, including the weighing of witness credibility." Smith v. Smith, 3rd Dist. No. 16-01-03, 2001-Ohio-2139. *Page 6 
 {¶ 11} The decision of whether to grant a CPO is within the sound discretion of the trial court, and an appellate court will not reverse the trial court's decision absent an abuse of discretion. Brubaker v.Farr, 3rd Dist. No. 13-05-32, 2006-Ohio-2001. To find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219, 450 N.E.2d 1140.
 {¶ 12} R.C. 3113.31(C) provides for a petitioner's right to request a CPO on behalf of their minor children to obtain protection from domestic violence.[3]
Domestic violence is defined in 3113.31 (A)(1) as follows:
 (1) "Domestic violence" means the occurrence of one or more of the following acts against a family or household member:
 (a) Attempting to cause or recklessly causing bodily injury;
 (b) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 or 2911.211 of the Revised Code;
 (c) Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code; *Page 7 
 (d) Committing a sexually oriented offense.
 {¶ 13} In the Order of Protection issued on July 16, 2007 the court found as follows:
 That respondent has inflicted excessive corporal punishment on the minor child Deenah Bohon and that petitioner is fearful that unless restrained he will abuse both minor children.
 {¶ 14} The Order of Protection covers both children, which we elect to address separately. First we turn to the evidence supporting the CPO as it relates to Deenah. At the hearing on the CPO, Nina described one incident where she believed Brian inappropriately disciplined Deenah.
 [T]hat there was one (1) incidence when she kept getting out of bed and he was spank,-he had spanked her several times and left bruises on her.
 * * *
 Like I had said before, with the spanking of her leaving the bruises on her bottom and her thighs and she's only two (2) years old, so she's not as familiar with staying in bed as she should be and he, — she had been bruised under her diaper and everything or through her diaper, I guess is what it'd be. And, I mean, it's just I, — when I took Deenah out of the home with me he hadn't said anything about my daughter but I just wanted to be, -I'd rather be safe than sorry.
(Tr.p 4-5).
 {¶ 15} In contrast to Nina's testimony, Brian stated that he never spanked Deenah and that discipline was confined to the use of the word "No." (Tr.p. 12). *Page 8 
 {¶ 16} Claudia Fugate, Brian's step-mother also testified. She stated that Nina had spoken with her about a spanking incident, but that she had never observed any marks on Deenah. Claudia testified that when Nina recounted the story, she specifically checked Deenah for marks and did not find any. (Tr.p. 22).
 {¶ 17} Turning next to the evidence as to Alexander, Nina was questioned as to why she sought the CPO and what danger Alexander was in. In response Nina testified as follows:
 I didn't know. I didn't know where my son was or anything. I stated that several times. Nobody was telling me where he was. I was calling several different people of his family and nobody would tell me where he was, wouldn't tell me how he was doing or nothing. So that scared me, being a mother not knowing how her child is.
(Tr.p. 7).
 {¶ 18} When further questioned as to what specific harm her son was in danger of, Nina responded that she was afraid he was "leaving him in his room or putting him in his room because his crying is getting annoying to him as soon as he wakes up." (Tr.p. 8). Nina further stated "I was just afraid and I was hoping that my son was not being treated like my daughter was and that he wasn't being left in his room because he was crying." (Tr.p. 8).
 {¶ 19} We note that, although Nina states that she did not know how Alexander was doing, she left him for several weeks in Brian's custody. Moreover, when Brian was questioned as to the custody agreement regarding *Page 9 
Alexander when Nina left the marital residence, he stated that "[t]he only thing she stated is,-when she left, that she would like to have every other weekend for visitation and maybe once through the week." (Tr.p. 11). Brian testified that he never heard from Nina after she moved out until he was served with a protection order. (Tr.p. 11). Furthermore, this Court is mindful that Nina stayed with Brian for several months after she alleges that the spanking incident with Deenah occurred which was her sole basis for concern with regard to Alexander.
 {¶ 20} Brian's father, Charles Fugate, testified at the hearing and stated that he frequently observed Brian interact with Alexander and observed no inappropriate behavior. Moreover, Charles testified that he was at the home on the day Nina left, and that everyone was calm and orderly and that he initially took Alexander to his home and then returned later with Alexander to be with Brian.
 {¶ 21} Claudia Fugate, Brian's step-mother, testified that she often watched Brian interact with Alexander, testifying that
 Brian was very attentive to the child. He was always feeding him at our house. He would change diapers, held him on his lap, put him in the car seat.
 * * *
 I think he is a good parent. He's a loving parent. He would hold him and hug him, tickle him.
(Tr.p. 21). Neither of Brian's parents expressed any concern about his ability to parent Alexander. *Page 10 
 {¶ 22} Both Charles Fugate, Brian's father, and Claudia Fugate testified that they had no concerns about Brian's ability to parent Alexander; and that moreover, both children interacted happily with Brian. With respect to Deenah, Charles testified that Brian treated Deenah "like he was her real father. I mean, he treated that little girl great. He loved her." (Tr.p. 18).
 {¶ 23} "Domestic violence" is defined as either recklessly causing or attempting to cause bodily injury or placing another person by the threat of force in fear of imminent serious physical harm. R.C.3113.31(A)(1). Newhouse v. Williams, 167 Ohio App.3d 215,854 N.E.2d 565, 2006-Ohio-3075. Viewing the testimony adduced at the hearing on the CPO order, with respect to both Deenah and Alexander, this Court cannot find either of the definitions of domestic violence articulated in R.C.3113.31 and Newhouse are supported by a preponderance of the evidence. Moreover, although this was not the basis of the trial court's determination, we do not find that either Deenah or Alexander meets the definition of abused child as articulated in R.C. 2151.031 which would also constitute domestic violence.
 {¶ 24} In sum, with no appellee's brief filed in this case, Brian's brief reasonably supports reversal of the trial court's decision granting the CPO. We conclude that the trial court abused its discretion in granting the CPO with respect *Page 11 
to both Alexander and Deenah. Accordingly, Brian's first and second assignments of error are sustained.
 {¶ 25} Because we are sustaining Brian's first and second assignments of error, the judgment of the trial court will be reversed and remanded. As a result, Brian's remaining assignments of error are rendered moot. Based on the foregoing, the judgment of the Common Pleas Court of Auglaize County, Ohio is reversed and the Civil Protection Order is vacated.
Judgment Reversed and Cause Remanded.
 PRESTON and ROGERS, J.J., concur.
[1] It is unclear from the limited record before this court, the date the parties were married and the terms of the separation. Moreover, we are unable to say which party filed for divorce and on what grounds the divorce was requested.
[2] Again, the limited record before this court does not explain who Nina was staying with, how long she had been staying there, and how long she planned to stay. At the hearing, Nina admitted that she was not permanently residing at the address in Auglaize County. Rather, Nina stated that she was "currently staying there but I'm also currently looking for another place." (Tr.p. 5).
[3] R.C. 3113.31(A)(3) provides, in pertinent part the definition of a family or household member as follows:
 (a) Any of the following who is residing with or has resided with the respondent:
 * * *
 (iii) A parent or a child of a spouse, person living as a spouse, or former spouse of the respondent. . . .
Based on this definition, we note that Deenah also qualifies as a "family or household member." *Page 1