[Cite as *Slusser v. Klosterman*, 2009-Ohio-2617.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MERCER COUNTY

JOEL A. SLUSSER,

   PLAINTIFF-APPELLEE,                  CASE NO. 10-09-01

  v.

WILHELMINA KLOSTERMAN,           O P I N I O N

   DEFENDANT-APPELLANT.

**Appeal from Mercer County Common Pleas Court
Domestic Relations Division
Trial Court No. 07-DV-017**

**Judgment Affirmed**

**Date of Decision: June 8, 2009**

**APPEARANCES:**

    *William E. Huber* for Appellant

    *Kathryn W. Speelman* for Appellee

**ROGERS, J.**

{¶1} Defendant-Appellant, Wilhelmina J. Klosterman, appeals the judgment of the Mercer County Court of Common Pleas granting a civil protection order on behalf of Plaintiff-Appellee, Joel A. Slusser. On appeal, Klosterman asserts that the trial court abused its discretion in issuing the civil protection order because Slusser did not present sufficient supporting evidence. Finding that the trial court did not abuse its discretion, we affirm the judgment of the trial court.

{¶2} In November 2007, Slusser filed a petition pursuant to R.C. 3113.31 for a domestic violence civil protection order ("CPO") against Klosterman, whom he designated as his former wife, after she allegedly gestured with her fist and threatened to hit him on three separate occasions, threatened to "blow his head off" with a gun, and attempted to hit him with her truck. Thereafter, the Mercer County Court of Common Pleas granted the ex parte CPO.

{¶3} In December 2007, the trial court held a full hearing on the CPO, as well as a petition for another CPO that Klosterman had filed against Slusser. Although Klosterman appeared without counsel and requested a continuance so that her retained counsel could attend, the trial court refused to grant a continuance and required her to proceed pro se. After the hearing, the trial court granted Slusser's CPO petition, which Klosterman appealed to this Court.

**{¶4}** In June 2008, in *Slusser v. Klosterman*, 3d Dist. No. 10-08-01, 2008-Ohio-2608, this Court reversed the trial court's decision and remanded the matter, finding that Klosterman was prejudiced by the trial court's denial of her request for a continuance. Additionally, this Court, sua sponte, noted that the trial court should resolve the issue of whether the parties were former spouses, as this was inconsistent with Klosterman's statement that the parties' marriage had been annulled. Id. at ¶10.

**{¶5}** In August 2008, Slusser moved the trial court to amend the pleadings to reflect that he was not the former spouse of Klosterman, as the parties' marriage had been annulled, but that he had been "living as a spouse" of Klosterman.

**{¶6}** In September 2008, the trial court held a rehearing on the CPO, at which the following testimony was heard.

**{¶7}** Slusser testified that the parties were married in Las Vegas in June 2006; that, in April or May of 2007, the parties annulled their marriage but continued their personal and business relationship; that, in November 2007, he filed a petition for a CPO against Klosterman, who was a family or household member; that he later amended the petition because he had initially stated the parties were former spouses, but the parties' marriage had been annulled; that he lived in a "spousal-type" relationship with Klosterman, cohabitating and having sexual relations with her within the previous five years (hearing tr., p. 7); that he

kept clothing at the parties' residence at Majorki Place; that, in July 2006, Klosterman struck him with a beer bottle; that, in November 2006, Klosterman stabbed his arm with twelve-inch-long scissors; that, in April 2007, Klosterman tore his shirt and struck him in the face, breaking his glasses and giving him a black eye; that, in May or June 2007, Klosterman threatened to "blow [his] head off," threatened to "pop [him] in the schnitzel," and gestured at him with her fist (Id. at 19); that he believed she would be able to "blow his head off" because she had four guns in the house; that, on that same day in May or June 2007, he walked to Wal-Mart and she attempted to run him over with her truck; that, in October 2007, Klosterman again threatened to "pop [him] in the schnitzel" while the two were camping (Id. at 9); that he was afraid to go shopping at Wal-Mart because he believed Klosterman may try to run him over again; and, that he had often feared Klosterman during their relationship and continued to be fearful of her.

{¶8} On cross-examination, Slusser testified that he and Klosterman lived together as spouses for approximately two and one-half years at Majorki Place; that he maintained a separate residence at West Bank Road; that he never changed his voter registration address, driver's license address, or mailing address to Majorki Place; that he never listed Majorki Place as his residence in any of the many police reports filed since 2006; that he and Klosterman owned the Majorki Place residence together as a business partnership; that, in October 2007, when the parties were camping and Klosterman threatened to hit him, the parties also

-4-

engaged in sexual relations; that, in November 2007, he violated Klosterman's CPO against him by calling her and was under probation for that violation; that he maintained contact with Klosterman even after obtaining the CPO against her because of their business relationship and "marriage-type" relationship (Id. at 45); and, that the parties had cohabited at residences on West Bank Road, Majorki Place, and Johnston Road.

{¶9}    Toni Slusser testified that Slusser was her younger brother; that she was aware that Slusser and Klosterman continued their personal relationship even after their marriage was annulled; that the parties resided together "off and on"; that Slusser maintained a home on West Bank Road, but the parties mostly lived at the Majorki Place residence; and, that she believed Slusser was fearful of Klosterman.

{¶10} Klosterman testified that she owned the Majorki Place residence as a limited liability partnership with Slusser; that she and Slusser married in June 2006, and subsequently annulled their marriage in March 2007; that she and Slusser never cohabitated or otherwise consummated their marriage; that, except for an occasional shirt or pair of underwear, Slusser kept no clothing at the Majorki Place residence; that she never lived at Slusser's West Bank Road residence; that she did not recall gesturing with her fist and threatening to hit him; that, in November 2007, she obtained a CPO against Slusser; that Slusser

continued to initiate contact with her by calling her and coming to her son's soccer games; and, that she never initiated contact with Slusser after obtaining the CPO.

**{¶11}** Shortly thereafter, the magistrate issued a decision, finding that Klosterman's testimony that the parties never cohabited in the previous five years was not credible, and that Slusser's testimony that he feared imminent serious physical harm by Klosterman was credible. Accordingly, the magistrate filed an opinion proposing issuance of a CPO for a period of five years.

**{¶12}** In November 2008, Klosterman filed objections to the magistrate's decision, arguing that Slusser failed to present sufficient evidence that the parties had cohabited within the meaning of the statute, and that Slusser's testimony that he was in fear of imminent physical harm was not reasonable because he consistently attempted to contact her even after the alleged violent incidents. Thereafter, the trial court overruled Klosterman's objections, finding that the magistrate's decision was supported by sufficient evidence in the record.

**{¶13}** It is from this judgment that Klosterman appeals, presenting the following assignment of error for our review.

> **THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT-APPELLANT'S OBJECTIONS TO THE MAGISTRATE'S DECISION FOR THE FOLLOWING REASONS: A. PLAINTIFF- APPELLEE FAILED TO PROVE THAT THE PARTIES EITHER LIVED AS SPOUSES OR THAT THEY HAD COHABITED WITHIN THE LAST FIVE YEARS. B. THAT THE PLAINTIFF-APPELLEE HAS FAILED TO PROVE THE REQUIREMENTS SET FORTH IN OHIO REVISED CODE §3113.31(D)(1).**

{¶14} In her sole assignment of error, Klosterman argues that the trial court erred in overruling her objections and granting Slusser a CPO because he failed to prove that the parties lived together as spouses or cohabited within the last five years, and failed to prove that he was in fear of imminent physical harm. We disagree.

{¶15} A trial court's decision of whether to grant a CPO is within its sound discretion, and an appellate court will not reverse that decision absent an abuse of discretion. *Brubaker v. Farr*, 3d Dist. No. 13-05-32, 2006-Ohio-2001, ¶16, citing *Parrish v. Parrish*, 95 Ohio St.3d 1201, 2002-Ohio-1623. To find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. Id., citing *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219. Additionally, as the trial court is in the best position to observe the witnesses and to assess the credibility of their testimony, we must presume the accuracy of the trial court's findings. *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 80.

{¶16} In order to grant a CPO against an individual, a trial court must find that the proponent has demonstrated by a preponderance of the evidence that the individual's family or household member is in danger of domestic violence. *Brubaker*, 2006-Ohio-2001, at ¶17, citing *Felton v. Felton*, 79 Ohio St.3d 34, 41-42, 1997-Ohio-302. R.C. 3113.31 discusses domestic violence and provides that:

**(1) "Domestic violence" means the occurrence of one or more of the following acts against a family or household member;**

**(a) Attempting to cause or recklessly causing bodily injury;**

**(b) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 or 2911.211 of the Revised Code[.]**

**\* \* \***

**(3) "Family or household member" means any of the following:**

**(a) Any of the following who is residing with or has resided with the respondent:**

**(i) A spouse, a person living as a spouse, or a former spouse of the respondent;**

**\* \* \***

**(4) "Person living as a spouse" means a person who is living or has lived with the respondent in a common law marital relationship, who otherwise is cohabiting with the respondent, or who otherwise has cohabited with the respondent within five years prior to the date of the alleged occurrence of the act in question.**

{¶17} Here, Slusser testified that he lived in a "spousal-type" relationship with Klosterman, cohabiting and having sexual relations with her within the previous five years; that he stored clothing at the parties' Majorki Place residence; that Klosterman struck him, stabbed him, and threatened him on multiple occasions; and, that he feared Klosterman at times during their relationship and continued to be fearful of her. Additionally, Toni Slusser testified that the parties resided together "off and on," and that she believed Slusser feared Klosterman.

Although Klosterman testified that the parties never cohabited and Slusser never stored clothing at the Majorki Place residence, and presented evidence that Slusser had initiated contact with her on several occasions despite the alleged violent incidents, a review of the record discloses sufficient evidence for the trial court to find by the greater weight of the evidence that the parties had cohabited during the preceding five years, were family or household members, and that a protective order was necessary to protect the petitioner from domestic violence. Therefore, we cannot find that the trial court abused its discretion in granting Slusser a CPO, particularly given that the trial court is in the best position to judge witness credibility. See *Seasons Coal*, supra.

{¶18} Accordingly, we overrule Klosterman's sole assignment of error.

{¶19} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI and SHAW, J.J., concur.**

**/jnc**