[Cite as *Smith v. Burroughs*, 2010-Ohio-4806.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
WYANDOT COUNTY

ALYSHA R. SMITH,

    PETITIONER-APPELLEE,           CASE NO.  16-09-23

    v.

RICHARD A. BURROUGHS, JR.,
                                    **O P I N I O N**
    RESPONDENT-APPELLANT.

Appeal from Wyandot County Common Pleas Court
Domestic Relations Division
Trial Court No. 09 DR 87

Judgment Affirmed in Part, Reversed in Part and Cause Remanded

Date of Decision:   October 4, 2010

APPEARANCES:

    *Steven M. Powell*  for Appellant

    *Alysha R. Smith,* Appellee

**ROGERS, J.**

{¶1} Respondent-Appellant, Richard A. Burroughs, Jr., appeals from the judgment of the Court of Common Pleas of Wyandot County, Domestic Relations Division, overruling Richard's objection to the Magistrate's order granting Petitioner-Appellee, Alysha Smith, a domestic violence civil protection order ("CPO") against him pursuant to R.C. 3113.31. On appeal, Richard argues that the trial court erred in overruling his objection to the Magistrate's grant of a CPO where insufficient evidence was presented to establish that he threatened "imminent physical harm" pursuant to R.C. 2919.25(C). Based on the following, we affirm in part, and reverse in part, the judgment of the trial court.

{¶2} On August 20, 2009, Alysha filed a request for, and was granted, an ex parte CPO. The CPO was granted on the basis of a same-day incident during which it was alleged that Richard, Alysha's live-in boyfriend, threatened to kill her if she left him. Alysha's three children were also included in the ex parte CPO.

{¶3} On August 26, 2009, the case proceeded to a full hearing on the CPO. At the hearing, both Alysha and Richard represented themselves pro se and testified on their own behalves. Additionally, Deputy Richard Kesler from the Wyandot County Sherriff's Office testified, as well as Richard's ex-wife and Alysha's ex-husband. The following was deduced from the testimony presented. Alysha and Richard were involved in a long-term relationship and lived together

as a couple in Carey, Ohio. Both Alysha and Richard had school-aged children from prior relationships who attended the same school in Carey. During the month of August 2009, arguments between the couple became more frequent. Alysha eventually told Richard that she wanted to leave him and end the relationship.

{¶4} On the morning of August 20, 2009, Alysha, who worked the third shift, was lying down attempting to sleep when Richard approached her and asked her to reconsider leaving him. Alysha responded that she would not reconsider her decision because she had promised her children she would leave him, as her children "were scared to come home." (CPO Hearing Tr., p. 25). An argument subsequently ensued between the couple. Alysha then attempted to remove herself from the situation by going upstairs into another bedroom. Alysha testified that, at that moment, Richard, a martial arts expert, standing six feet and three inches tall, walked toward Alysha with his hands behind his back, leaned down until he was approximately two inches from her, and stated the following: "You're not going to leave me. The only way that you are going to leave this house and going to leave me is going to be in a body bag." (Id. at pp. 25-26). However, Richard testified that he did not make that statement.

{¶5} Alysha testified that, for the next ten minutes, she negotiated with Richard to let her go upstairs into another bedroom so that she could sleep, and

that both she and Richard went upstairs to her daughter's bedroom. The conversation regarding the state of their relationship continued upstairs, and Alysha asked to be left alone so that she could sleep. Alysha further testified that Richard told her that he could not trust her and that he could not leave her alone because, if he did, she would call someone and he would never see her again. Alysha stated that she continued to negotiate with Richard telling him that she just wanted to sleep. Richard remained in the bedroom and watched Alysha as she tried to sleep. Alysha testified that she convinced Richard to let her call her children because they were expecting her call, and Richard remained in the bedroom while Alysha made the call.

{¶6} Alysha's ex-husband, Jason Clauss, answered her phone call, and Alysha pretended that she was talking to her children on the other end. During the phone call, Richard left the room, and Alysha closed the door. Jason testified that Alysha asked him unusual questions, such as what he was eating and if he watched any movies; that Alysha also told him that Richard threatened to kill her and she thought it was serious; and, that she instructed him to call the police. After Alysha hung up the phone, she locked the bedroom door and barricaded herself in the room by placing a vanity in front of the door.

{¶7} At this point, Richard had left the house and was standing in the front lawn looking up at the second story window where Alysha was located.

Richard yelled up to Alysha to tell her that he was going into town to run errands. Alysha franticly called 911 and explained the situation to the operator.

{¶8} Deputy Kesler responded to the call. He entered the residence and found Alysha alone upstairs in the bedroom with the door still barricaded; however, there was no indication that Richard attempted to force his way into the room. Deputy Kesler convinced Alysha to come out of the room to speak with him, and Alysha was very upset, crying and shaking. Alysha then described to him what had just occurred, indicating that she thought Richard was going to kill her.

{¶9} Subsequently, Deputy Kesler located Richard not far from the residence, placed him under arrest, and charged him with menacing, and Alysha filed her petition for an ex parte CPO.

{¶10} At no point during the CPO hearing was evidence presented that Richard threatened Alysha's children in any way, or that her children were present at the time of the incident between her and Richard.

{¶11} On September 1, 2009, the Magistrate granted the CPO, finding that Richard's statements placed Alysha in fear of imminent, serious physical harm. The protection order was placed in effect for five years and required Richard to have no contact with Alysha and to remain at least 500 feet from her. However, the protection order permitted Richard to attend school functions that both his and

Alysha's children were participating in, but restricted Richard from approaching or communicating with Alysha and/or her children while at these events. Furthermore, the CPO also applied to Alysha's three children.

**{¶12}** Richard retained counsel and filed an objection to the Magistrate's order, asserting that the alleged threat was conditional and did not meet the standard of threatening imminent, serious physical harm pursuant to R.C. 2919.25. On October 22, 2009, the trial court overruled Richard's objection, upholding the Magistrate's order and finding sufficient evidence that Richard threatened imminent physical harm to Alysha.

**{¶13}** It is from the trial court's overruling of his objection to the Magistrate's order that Richard appeals, presenting the following assignment of error for our review.

> **THE TRIAL COURT ERRED IN ORDERING THE DOMESTIC VIOLENCE CPO BECAUSE ANY "ALLEGED" THREAT WAS CONDITIONED UPON THE APPELLEE ACTUALLY MOVING OUT AND LEAVING APPELLANT AT SOME POINT FOLLOWING ONE MONTH LATER, AND DOES NOT MEET THE STANDARD OF THREATENING "IMMINENT PHYSICAL HARM" PURSUANT TO ORC § 2919.25(C).**

**{¶14}** The decision of whether to grant a CPO is within the sound discretion of the trial court, and an appellate court will not reverse the trial court's decision absent an abuse of discretion. *Brubaker v. Farr*, 3d Dist. No. 13-05-32, 2006-Ohio-2001, ¶16. An abuse of discretion "connotes more than an error of law

or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. Id.

{¶15} A trial court may properly grant a CPO where it finds that the petitioner has shown by a preponderance of the evidence that the petitioner or the petitioner's family or household members are in danger of domestic violence. *Felton v. Felton*, 79 Ohio St.3d 34, 1997-Ohio-302, paragraph two of syllabus. "Domestic violence" includes placing a family or household member "* * * by threat of force in fear of imminent, serious physical harm or committing a violation of section 2903.211 [2903.21.1] or 2911.211 [2911.21.1] of the Revised Code[.]" R.C. 3113.31(A)(1)(b). Furthermore, "family or household member" is defined as follows:

> **(a) Any of the following who is residing with or has resided with the respondent:**
>
> **(i) A spouse, a person living as a spouse, or a former spouse of the respondent;**
>
> **(ii) A parent, a foster parent, or a child of the respondent, or another person related by consanguinity or affinity to the respondent;**
>
> **(iii) A parent or a child of a spouse, person living as a spouse, or former spouse of the respondent, or another person related by consanguinity or affinity to a spouse, person living as a spouse, or former spouse of the respondent.**

**(b)   The natural parent of any child of whom the respondent is the other natural parent or is the putative other natural parent.**

R.C. 3113.31(A)(3)(a)(i)-(iii),(b).    Therefore, the focus of our review is on whether there was credible evidence for the trier of fact to find by a preponderance of the evidence that Richard's statements placed Alysha in fear of imminent, serious physical harm.

**{¶16}** In the present case, the element of whether Alysha is a household member is not in dispute.   However, Richard contends that his actions did not constitute domestic violence within the purview of the statute to warrant the issuance of a CPO.   In determining whether an act of domestic violence has been committed by threat of force, "'the critical inquiry under [R.C. 3113.31] 'is whether a reasonable person would be placed in fear of imminent (in the sense of unconditional, non-contingent), serious physical harm.'"   *Fleckner v. Fleckner*, 177 Ohio App.3d 706, 2008-Ohio-4000, ¶20, quoting *Maccabee v. Maccabee* 10th Dist. No. 98AP-1213, 1999 WL 430943, quoting *Strong v. Bauman*, 2d Dist. Nos. 17256, 17414, 1999 WL 317432.   The inquiry involves both subjective and objective elements.   *Williamson v. Williamson*, 180 Ohio App.3d 260, 2008-Ohio-6718, ¶47, citing *Strong v. Bauman*, 2d Dist. Nos. 17256, 17414, 1999 WL 317432.

**{¶17}** Based on the record before us, Alysha testified that she and Richard were arguing when she attempted to end the discussion by leaving the room, and

-8-

that Richard then advanced toward Alysha with his hands behind his back, lowered his body until he was two inches from her, and made the following statement: "You're not going to leave me. The only way that you are going to leave this house and going to leave me is going to be in a body bag." (CPO Hearing Tr., p. 25-26).

{¶18} Alysha continued that Richard's threat rendered her speechless. She further testified that she gathered herself enough to negotiate with Richard to allow her to go into an upstairs bedroom so that she could call her children; that Richard remained in the room as she made the call; that her ex-husband, Jason, answered her phone call; and, that she pretended to talk with her children while Jason remained on the phone, until Richard left the room.

{¶19} Jason testified that Alysha was acting extremely odd and out of character by asking him unusual questions, such as what he was eating and if he had watched any movies. Jason then testified to the following statements. "[S]he whispered into the phone that [Richard] is threatening to kill her and she thinks [he] was serious, she needed me to call the cops." (Id. at p. 36).

{¶20} Alysha further testified that she hung up the phone, barricaded herself in the bedroom, and frantically called 911. The responding officer, Deputy Kesler, testified that he found Alysha still barricaded in the bedroom when he arrived. In describing her mental state, Deputy Kesler testified that Alysha was

crying, shaking, and upset, making it difficult to interview her. Deputy Kesler stated that Alysha repeated the threats that Richard had made to her and recounted her attempts to keep calm, negotiate with Richard, and call for help.

{¶21} Based on the testimony elicited at the hearing, it is clear that sufficient evidence was presented indicating that a reasonable person would be in fear of imminent, serious physical harm, and that Richard actually placed Alysha in fear of imminent, serious physical harm. Not only does Richard's statement to Alysha evidence such a threat, but Alysha's actions of barricading herself in the room and calling for assistance, and her display of fear to Jason and Deputy Kesler all indicate that Alysha was in fear of imminent physical harm. Although Richard testified that he did not make the statement that Alysha was only going to leave in a body bag, much of Alysha's version of the events was corroborated by Richard, and both Deputy Kesler's and Jason's testimony of Alysha's statements to them also matches her testimony. Moreover, we are not persuaded by Richard's contention that any threat made to Alysha was not imminent because it was conditioned on Alysha moving out and leaving Richard. Imminent means threatening to occur immediately or at any moment, see *State v. Collie* (1996), 108 Ohio App.3d 580, 583, and we find the record clearly demonstrates that sufficient evidence existed to establish that Richard's threat of death was imminent and Alysha believed it could occur at any moment.

{¶22} Accordingly, we overrule Richard's assignment of error.

{¶23} Although we found there to be sufficient evidence demonstrating that Richard placed Alysha in fear of imminent physical harm, we note that Alysha's children were also persons protected by the CPO. Accordingly, there must also be sufficient evidence indicating that Richard's threats of force placed her children in fear of imminent physical harm.

{¶24} However, upon our review of the record, we find no evidence was presented indicating that Richard threatened Alysha's children, or even that her children were at the residence at the time of the incident. Although some evidence indicated that the children did reside at least part time in the residence with Alysha and Richard, suggesting that the children may have qualified under the definition of family or household member pursuant to R.C. 3113.31(A)(3)(a)(i)-(iii), no evidence was presented that they were threatened with imminent, serious physical harm. Accordingly, because a trial court cannot include a family member in a CPO when no direct evidence was presented indicating the family member was placed in fear of imminent, serious physical harm, it was plain error for the trial court to have included the children in the order when no evidence was even presented as to the children.

{¶25} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued in his assignment of error, but having found error

prejudicial to the appellant in the trial court's issuance of the CPO pertaining to Alysha's children, we affirm in part, and reverse in part, the judgment of the trial court and remand for further proceedings consistent with this opinion.

*Judgment Affirmed in Part,*
*Reversed in Part and*
*Cause Remanded*

**WILLAMOWSKI, P.J., concurs.**

**/jlr**

**SHAW, J., DISSENTS:**

{¶26} I respectfully dissent from the decision of the majority to *sua sponte* modify the CPO to exclude the children from the trial court's order based on a civil "plain error" doctrine.

{¶27} The issue of the inclusion of the children in the CPO was not raised by any of the parties on appeal. While the evidence does not indicate that the minor children were actually present during the specific threats to Alysha, the children did reside in the home where the threats took place and were commonly exposed to Richard's actions in general both at home and at school. It is also important to note that the specific threats by Richard in this case referred to Alysha's attempts to leave him at any time now or in the *future* and thereby posed

an ongoing threat of physical harm or death subject to implementation at any time in the future when the children might be present.

{¶28} As such, the trial court was well within its discretion to determine that the children's safety was put at risk by Richard's threats against Alysha. This determination by the trial court, again unobjected to by anyone, was entirely reasonable based on the record. In any event, it does not constitute an abuse of discretion, and certainly does not in any way pose a "challenge to the legitimacy of the judicial process" as required to support any application of the so-called "civil plain error doctrine" by this court. See, *Ordean v. Ordean*, 3d Dist No. 17-06-15, 2007-Ohio-3979, ¶14, quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 1997-Ohio-401, syllabus. Indeed, in my view, the decision of the majority on this issue is itself an abuse of our judicial discretion.

{¶29} I would affirm the decision of the trial court in its entirety.

**/jlr**