[Cite as *Studer v. Studer*, 2012-Ohio-2838.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
CRAWFORD COUNTY


RALPH STUDER,

    PETITIONER-APPELLEE,          CASE NO. 3-11-04

    v.

BRENDA STUDER,                O P I N I O N

    RESPONDENT-APPELLANT.


Appeal from Crawford County Common Pleas Court
Domestic Relations Division
Trial Court No. 05 DR 0306

Judgment Reversed and Civil Protection Order Vacated

Date of Decision: June 25, 2012


APPEARANCES:

    *Lori Ann McGinnis* for Appellant

    *Geoffrey L. Stoll* for Appellee

**ROGERS, J.**

{¶1} Respondent-Appellant, Brenda Studer ("Brenda" or "Respondent"), appeals the judgments of the Court of Common Pleas of Crawford County, Domestic Relations Division, granting the motion to continue the civil protection order against her filed by Petitioner-Appellee, Ralph Studer ("Ralph" or "Petitioner"). On appeal, Brenda argues that the trial court erred in hearing the case and entering judgment when an affidavit of disqualification was filed with the Ohio Supreme Court; that she was denied due process of law; and, that the trial court erred in extending the civil protection order as Petitioner failed to meet his burden by a preponderance of the evidence. Finding that Ralph failed to meet his burden by a preponderance of the evidence, we reverse the decision of the trial court and vacate the extension of the civil protection order.

{¶2} The procedural and substantive history of this case is rather bizarre. The facts pertinent to the instant appeal are as follows. On November 18, 2005, Ralph filed a petition for a civil protection order pursuant to R.C. 3113.31 against his daughter, Brenda. In his petition, Ralph alleged that on November 16, 2005, Brenda was verbally abusive to him, threw pop on him, and tried to hit him. Ralph alleged that he and the rest of the family were afraid of her. The trial court granted an ex parte order, to remain in effect until November 18, 2006. After a full hearing on February 1, 2006, the trial court issued a civil protection order

("CPO") to remain in effect until February 1, 2008.[1] The order also included a provision allowing Brenda weekly visitations with her mother, Elizabeth.[2] On January 25, 2008, Ralph filed a motion to continue the CPO, which the trial court granted ex parte, to be effective until February 1, 2011.[3] The trial court scheduled a full hearing on the matter for February 11, 2008. Pursuant to an agreement between the parties, the trial court ordered the CPO to remain in effect until February 1, 2011.[4] This judgment entry again provided for supervised visitation between Brenda and her mother.

{¶3} On June 22, 2010, Brenda filed a motion to terminate the protection order and to enforce visitation with Elizabeth ("Motion to Terminate"). Ralph filed a motion to dismiss ("Motion to Dismiss") arguing that the trial court did not have personal jurisdiction over Elizabeth.[5] The trial court set a hearing on the motions for December 6, 2010. Before the hearing, Ralph filed a motion to continue the CPO ("Motion to Continue") and for a mental health examination of Brenda ("Motion for Mental Examination").

{¶4} On November 26, 2010, Brenda filed an affidavit of disqualification of Judge Wiseman with the Ohio Supreme Court. The Ohio Supreme Court

---

[1] The record is devoid of any evidence that establishes the trial court's findings. However, we must presume regularity.

[2] We note, however, that Elizabeth was not named in the petition and was not a party to the proceedings.

[3] We find no authority for the issuance of an ex parte order extending the effective date of a CPO.

[4] The trial court did not hold a full hearing as required by R.C. 3113.31(E)(1).

[5] While we agree there was no authority to include orders affecting a non-party, we find Ralph's objection interesting since visitation with the mother had been included twice before.

denied the same on December 6, 2010. Judge Wiseman, however, voluntarily recused himself and his magistrates from further proceedings in the matter on December 2, 2010, referred the matter to the Ohio Supreme Court for the appointment of a visiting judge, and vacated the December 6, 2010 hearing date. The Ohio Supreme Court then assigned Judge Galvin as a visiting judge to preside over and conclude the proceedings.[6]

{¶5} On January 5, 2011, the trial court scheduled a hearing for January 14, 2011. On January 7, 2011, Brenda moved for a continuance so that she could have more time to serve subpoenas. The trial court denied the motion. On January 12, 2011, Ralph and the Crawford County Job and Family Services filed motions to quash subpoenas. The trial court ostensibly granted Ralph's motion to quash on the same day and Crawford County Job and Family Services' motion on January 14, 2011, both without a hearing or allowing Brenda an opportunity to respond. On January 13, 2011, Brenda filed a motion to compel the presence of witnesses and for a continuance, which was denied.[7] She also filed an affidavit to disqualify Judge Galvin with the Ohio Supreme Court on January 14, 2011, which was denied on January 25, 2011.

---

[6] The assignment was effective December 8, 2010, but was not filed with the Crawford County Clerk of Courts Office until January 13, 2011.

[7] Brenda's motion was filed on a single sheet of paper. Docket No. 70. The denial was not in the form of a ruling in a separate document, but was simply a notation on the same paper as the motion. Judge Galvin's name was written by someone other than the judge who apparently was given permission over the telephone to sign for the judge.

{¶6} At the January 14, 2011 hearing, the trial court instructed its case manager to speak on the record regarding the affidavit of disqualification alleged to have been filed with the Ohio Supreme Court. The case manager stated that at 9:30 that morning, she called James Bambino at the Ohio Supreme Court who informed her that no affidavit of disqualification had been filed with the Ohio Supreme Court. Accordingly, the trial court continued to hear the case.

{¶7} Donna Durtschi, Ralph's daughter and Brenda's sister, stated that if the CPO was not extended, her families' lives and her parents' lives would continue to be "a life of hell with no peace." Hearing Tr., p. 20. She testified that Ralph is in a very delicate condition as he has had two aortic aneurysms and very unstable blood pressure. She feared that any type of altercation with Brenda would kill him.

{¶8} Jennifer Dornbirer, another of Ralph's daughters and Brenda's sister, testified that she believes Brenda is an ongoing danger to Ralph due to his poor health. She believes that the CPO should continue because Ralph is not strong enough to have a confrontation with Brenda. She testified that Ralph told her the same.

{¶9} Scott Robertson, the Police Chief of New Washington then testified as Brenda's witness. He stated that in 2004 or 2005 Brenda filled out a police report regarding an argument between her and Ralph that escalated into Ralph hitting

her; Brenda then poured a small amount of pop on Ralph.  Police Chief Robertson testified that Brenda did not want to press charges against Ralph at that time.  He stated that he did not see any physical evidence to support Brenda's claim that Ralph hit her as she reported the incident several weeks after it occurred.  He also testified that Brenda and Ralph's relationship was hostile before the filing of the petition for the CPO.  In response to the trial court's questioning, Police Chief Robertson testified that he has never personally observed any indication of abuse or assault on any of the members of the household since 2006.  He concluded by testifying that Ralph's health was deteriorating and that Ralph would have a small chance of protecting himself if Brenda were to attack him.

{¶10} David Studer, Ralph's son and Brenda's brother, testified as Brenda's witness.  He stated that he has lived at Ralph and Elizabeth's home for over forty years.  He testified that he has seen Ralph hit Brenda, and that family members have threatened him that if he continues to help Brenda, he will have to leave Ralph and Elizabeth's home.  He said that he had a conversation with Ralph about Ralph's desire to drop the CPO, but that Ralph did not drop it due to threats made by other family members.  He stated that he sent letters to the other family members about Brenda and Ralph's situation but that he did not show the letters to Ralph for fear he would become upset.  He testified that he never witnessed any

attempt by Brenda to hit Ralph, but that she did put sprinkles of pop on Ralph's head.

{¶11} On cross-examination, David testified that Ralph has a very serious heart problem, and that Ralph is not supposed to be under any stress as it could kill him. He stated that Brenda and Ralph's relationship is not good as they argue frequently. David explained that there was an incident with Brenda while she was driving her vehicle. He testified that when Brenda was backing up, Ralph moved out of the way, but that his movement was not sudden. He testified that whether Brenda was trying to hit Ralph is "subject to interpretation." Hearing Tr., p. 167. He testified that Ralph would be safer if he had no contact with Brenda. He testified that Brenda makes telephone calls to the house.

{¶12} Lastly, Brenda testified that she was never a threat to her father and never violent toward him. She testified that she would never go to the house if she thought it would put her father's life at risk.

{¶13} On January 21, 2011, the trial court filed a judgment entry denying the Motion to Terminate and granting the Motion to Dismiss. On January 28, 2011, the trial court filed a supplemental judgment entry extending the CPO until January 31, 2016. In the supplemental judgment entry the trial court stated:

> The uncontroverted testimony established that the Petitioner, Ralph C. Studer, suffers from a multitude of medical conditions that have left him in [a] severely compromised medical state. This same

evidence further established that exposing Petitioner to any type of conflict is likely to have serious adverse consequences to his health.

Also established by testimony was the fact that the relationship between Petitioner and Respondent prior to the establishment of the Civil Protection Order was filled with conflict. The testimony further established that, during the period of time that the Civil Protection [O]rder has been in place, the Respondent has violated that Order by calling the Petitioner's home. Docket No. 76.

{¶14} It is from these judgments Brenda appeals, presenting the following assignments of error for our review.

### Assignment of Error No. I

**THE TRIAL JUDGE ERRED IN PROCEEDING TO HEAR AND TO ENTER JUDGMENT IN THIS CASE WHEN AN AFFIDAVIT OF DISQUALIFICATION WAS FILED WITH THE OHIO SUPREME COURT AGAINST HER AND SHE HAD NOTICE OF THE AFFIDAVIT OF DISQUALIFICATION BOTH AT THE TIME SHE HEARD AND ENTERED JUDGMENT IN THE CASE.**

### Assignment of Error No. II

**THE RESPONDENT WAS DENIED DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDEMENT (sic) TO THE UNITED STATES CONSTITUTION, THE CONSTITUTION OF THE STATE OF OHIO AND THE LAWS OF THE STATE OF OHIO, WHEN THE TRIAL JUDGE DENIED HER THE OPPORTUNITY TO RETAIN COUNSEL TO REPRESENT HER, THE OPPORTUNITY TO CROSS-EXAMINE THE PROSECUTING WITNESS AGAINST HER, RALPH STUDER, AND THE OPPORTUNITY TO COMPEL THE ATTENDANCE OF WITNESSES ON HER BEHALF, AND THE OPPORTUNITY TO NOTICE AND A HEARING ON HER MOTIONS PENDING BEFORE THE COURT.**

## *Assignment of Error No. III*

**THE TRIAL JUDGE ERRED IN ISSUING AN EXTENSION OF THE CIVIL PROTECTION ORDER UNTIL JANUARY 31, 2016 WHERE THE PETITIONER DID NOT MEET HIS BURDEN OF PROOF BY A PREPONDERANCE OF THE EVIDENCE.**

{¶15} Due to the nature of Brenda's assignments of error, we elect to address her third assignment of error first as it is dispositive.

### *Assignment of Error No. III*

{¶16} In her third assignment of error, Brenda argues that the trial court erred in extending the CPO for an additional five years as Ralph failed to establish by a preponderance of the evidence that Brenda committed an act of or threatened domestic violence. Further, Brenda argues, that since the original CPO was entered pursuant to an alleged consent agreement, there was never a finding of an act of domestic violence.[8] Brenda urges, therefore, that Ralph has not established by a preponderance of the evidence that the CPO should have been extended.

{¶17} Ralph contends that the trial court did not abuse its discretion in granting the extension of the CPO. Ralph highlights testimony from the hearing which, he argues, establishes his fragile medical condition, the conflict-ridden nature of his relationship with Brenda, and the risk that his medical conditions could worsen if triggered by stress from contact with Brenda.

---

[8] The initial CPO was granted after a full hearing. It was extended pursuant to the consent agreement.

*Standard of Review*

**{¶18}** A trial court's decision to grant or deny a civil protection order is reviewed under an abuse of discretion standard. *Deacon v. Landers*, 68 Ohio App.3d 26, 31 (4th Dist. 1990). *See also Newhouse v. Williams*, 167 Ohio App.3d 215, 223, 2006-Ohio-3075 (3d Dist.). A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *See State v. Boles*, 2d Dist. No. 23037, 2010-Ohio-278, ¶ 17-18, citing *Black's Law Dictionary* 11 (8th Ed.2004). When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*Extension of Civil Protection Order*

**{¶19}** The purpose of a civil protection order issued pursuant to R.C. 3113.31 is to provide the petitioner or other household members with protection from domestic violence. *Thomas v. Thomas,* 44 Ohio App.3d 6, 7 (10th Dist. 1988). When a petitioner seeks a civil protection order pursuant to R.C. 3113.31, "the trial court must find that petitioner has shown by a preponderance of the evidence that petitioner . . . [is] in danger of domestic violence." *Felton v. Felton*, 79 Ohio St.3d 34 (1997), paragraph two of the syllabus.

**{¶20}** Domestic violence, as the basis for a civil protection order, is defined in R.C. 3113.31(A)(1) as:

> (a) Attempting to cause or recklessly causing bodily injury;
> (b) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 or 2911.211 of the Revised Code;
> (c) Committing any act with respect to a child that would result in the child being an abused child . . . ;
> (d) Committing a sexually oriented offense.

**{¶21}** A thorough review of the record reveals that no finding of domestic violence was made on the record until the hearing on January 14, 2011, during which the trial court made the cursory statement: "I have reviewed the file . . . and it's apparent that the violence occurred, no matter what it is that was said here today; that the opportunity for appeal is long gone, and the only issue is whether a man who two doctors appear to have said hangs onto life by a thread is going to be protected." Hearing Tr., p. 215. Given the testimony at the hearing and the evidence in the record, the trial court's finding of domestic violence could only refer to something that occurred prior to the issuance of the original CPO in 2005, as the record reveals no finding or evidence of any conflict since that time.

**{¶22}** Assuming domestic violence occurred prior to 2005, the issue becomes whether a preponderance of the evidence at the January 14 hearing established the need for an extension. In determining whether to grant an extension of a civil protection order, Ohio courts have looked to several relevant

factors, although there is little informative case law on the matter. Past acts of domestic violence may serve as the basis for an extension of a civil protection order when coupled with new threats of domestic violence. *See Woolum v. Woolum*, 131 Ohio App.3d 818, 822 (12th Dist. 1999), *Lain v. Ververis*, 12th Dist. No. CA99-02-003 (Oct. 18, 1999), *Anderson v. Anderson*, 7th Dist. No. 00-C.A.-89 (Dec. 19, 2001). *See also Welch v. Staggs*, 4th Dist. No. 08CA3216, 2009-Ohio-379, ¶ 20-21 (trial court did not abuse its discretion in denying a renewal of a CPO as the petitioner failed to report any alleged incidents of domestic violence or alleged violations of the initial CPO to law enforcement or to the court).

{¶23} There must also be evidence that the petitioner has a reasonable fear of serious physical harm based on new threats of domestic violence should the trial court grant the motion to extend the CPO. *Woolum* at 822 (past acts of domestic violence coupled with recent threats and the petitioner's fear for her safety justified the renewal of the civil protection order); *Patton v. Patton*, 5th Dist. No. CT2009-0031, 2010-Ohio-2096, ¶ 35-75 (testimony established that based on past acts of domestic violence petitioner had a continued fear for her safety if the civil protection order was not renewed). Whether the petitioner has a reasonable fear of serious physical harm is a two-part test, requiring both a subjective and an objective inquiry. *Smith v. Burroughs*, 3d Dist. No. 16-09-23, 2010-Ohio-4806, ¶ 16, citing *Williamson v. Williamson*, 180 Ohio App.3d 260,

2008-Ohio-6718, ¶ 47, citing *Strong v. Bauman*, 2d Dist. Nos. 17256, 17414 (May 21, 1999). The subjective analysis requires that the petitioner testify both about the act and the fear caused by the act. *See Williamson*, 180 Ohio App.3d at ¶ 47, citing *Henry v. Henry*, 4th Dist. No. 04CA2781, 2005-Ohio-67, ¶ 19-22, citing *Ohio Domestic Violence Law*, 8.7, at 254 (2004).

{¶24} Change in circumstances and the severity of the physical injury or the nature of the domestic violence have also been considered in determining the propriety of granting a civil protection order. *Williamson* at ¶ 57-60.

{¶25} Giving due deference to the trial court's determination that a past act of domestic violence occurred, we find, nonetheless that the trial court abused its discretion by granting the extension of the CPO. First and foremost, no evidence was presented as to Brenda's current threats of domestic violence, i.e., any threats occurring since the initial CPO was granted in 2005. In fact, the evidence established the opposite. David testified that in the past five years Brenda has not come over to the house. Hearing Tr., p. 181. Brenda testified that she has not seen or talked to her parents in five years. Hearing Tr., p. 195. Further, there was no testimony that Brenda attempted to contact Ralph since the initial 2005 CPO.

{¶26} Secondly, the record is devoid of any affirmative or specific statement made by Ralph to establish his current fear of serious physical harm. He failed to appear at the hearing to testify regarding the alleged acts of domestic

violence or the fear he suffered as a result of those acts. In fact, the trial court prevented Brenda from obtaining Ralph's testimony when it arbitrarily quashed her subpoena of him.[9] Moreover, there was no offer of any sworn statement or deposition. While this Court is sensitive to appellee's fragile medical state, we nonetheless, cannot engage in conjecture.

{¶27} In this case, the record reveals that Ralph not only failed to provide any affirmative statement or testimony regarding his fear, but the witnesses testifying on his behalf did not possess first-hand, personal knowledge of his fear. Rather, the Petitioner's witnesses, two of his daughters, testified about *their* subjective fear that Ralph would not be able to defend himself against an attack or that stress caused by a confrontation with Brenda would ultimately kill Ralph. As there is no evidence of Ralph's subjective fear, we need not address whether this fear, if it exists, is reasonable.

{¶28} Lastly, the severity of the apparent initial act of domestic violence is highly suspect. As there was no finding on the record as to what action constituted domestic violence, we are prohibited from analyzing its nature or the severity of any injury sustained by Ralph.

{¶29} It is apparent that the trial court, rather than applying the foregoing factors, aimed to protect Ralph due to his medical condition, as evidenced by its

_____

[9] We find nothing in the record to indicate the petitioner complied with Civil Rule 45(C)(4) in his motion to quash, or that Brenda was permitted an opportunity to show a substantial need pursuant to Civil Rule 45(C)(5).

-14-

statement that "the only issue is whether a man who two doctors appear to have said hangs onto life by a thread is going to be protected." Hearing Tr., p. 215. "Restrictions must bear a sufficient nexus to the conduct that the trial court is attempting to prevent." *Newhouse*, 167 Ohio App.3d 215, 2006-Ohio-3075, at ¶ 16. Here, the conduct the trial court is attempting to prevent is any conduct which may cause Ralph to experience adverse health consequences due to stress. The purpose of a civil protection order, however, is not to protect people from adverse health effects; the purpose is to protect people from domestic violence. *Thomas*, 44 Ohio App.3d at 7.

{¶30} Accordingly, we find that a petitioner's fragile medical condition alone cannot provide the basis for a civil protection order issued pursuant to R.C. 3113.31. Without evidence of Petitioner's reasonable fear of and Respondent's ongoing threats of future domestic violence, especially in light of the weak evidence regarding past domestic violence, the extension of the domestic violence civil protection order, in this case, is not the proper means to protect Petitioner. We therefore find that the trial court abused its discretion in extending the CPO based on Ralph's medical condition.

{¶31} Accordingly, we sustain Brenda's third assignment of error.

**{¶32}** Due to our resolution of Brenda's third assignment of error, her first two assignments of error are rendered moot and we decline to address them. App.R. 12(A)(1)(c).

**{¶33}** Having found error prejudicial to Brenda herein, in the particulars assigned and argued in the third assignment of error, we reverse the judgment of the trial court and vacate the extension of the civil protection order.

*Judgment Reversed and*
*Civil Protection Order Vacated*

**SHAW, P.J., Dissents.**
**PRESTON, J., concurs in Judgment Only.**

**/jlr**