OPINION
{¶ 1} Respondent-appellant Traci A. Seibert ("Traci") brings this appeal from the judgment of the Court of Common Pleas of Crawford County granting a domestic violence civil protection order (CPO) requiring her to stay away from her minor daughter, Stephanie Seibert ("Stephanie").
 {¶ 2} In 2001, Traci's husband died of complications from a stroke suffered a year earlier. Afterwards, Traci suffered from episodes of severe depression. In 2002, during a bout with depression and during an argument with Stephanie, Traci made a statement to Stephanie that she was going to get a gun and shoot the two of them. Stephanie repeated this statement to a friend, who informed the police. As a result, Traci pled guilty to menacing, a fourth degree misdemeanor, and served 30 days in jail. While Traci was in jail, Stephanie stayed with her paternal aunt. Petitioner-appellee Christopher Jon Seibert ("Christopher"), Stephanie's paternal uncle, filed for a CPO and asked that Traci not be allowed to have any contact with Stephanie.[1] An ex parte order was issued granting the CPO based upon the allegations set forth in the petition. On November 27, 2002, a hearing was held, and the magistrate found that Traci had not been convicted of domestic violence, and that Stephanie was neither abused nor had ever been in fear of her mother. However, the magistrate determined that since Stephanie was still a minor[2], she did not comprehend the threat and should have felt fear. This argument was the only instance alleged that Traci had threatened to harm Stephanie, although there were other instances when Traci had threatened to kill herself.[3] Based upon these findings, the magistrate granted the CPO, but ordered that Traci be granted unlimited telephone access to her daughter and have at least four hours of supervised visitation per week. The magistrate also stated that the court would entertain a motion to vacate the CPO once Traci's counselor indicated that Traci would not behave violently towards Stephanie. The trial court adopted these findings, but ruled that Traci would have no visitation. The trial court granted the CPO until October 2, 2003. It is from this judgment that the Traci appeals and raises the following assignments of error.
The [CPO] issued by the court is against the manifest weight of theevidence in that the alleged victim was not in danger of imminent harmnor was domestic violence committed against the alleged victim as definedin ORC 3113.31.
 The court erred in finding that [Christopher] had standing to pursue a[CPO] against [Traci] and failed to follow the guidelines provided in ORC3113.31 in granting the [CPO].
R.C. 3113.31 provides in pertinent part as follows.
(1) "Domestic violence" means the occurrence of one or more of thefollowing acts against a family or household member:
 * * *
 (b) "Placing another person by the threat of force in fear of imminentserious physical harm or committing a violation of [R.C. 2903.211 or2911.211].
 * * *
 (3) "Family or household member" means any of the following:
 (a) Any of the following who is residing with or had resided with therespondent.
 (i) A spouse, a person living as a spouse, or a former spouse of therespondent;
 (ii) A parent or a child of the respondent, or another person relatedby consanguinity or affinity to the respondent;
 (iii) A parent or a child of a spouse, person living as a spouse, orformer spouse of the respondent, or another person related byconsanguinity or affinity to a spouse, person living as a spouse, orformer spouse of the respondent.
 (b) The natural parent of any child of whom the respondent is the othernatural parent or is the putative other natural parent.
 * * *
 (C) A person may seek relief under this section on the person's ownbehalf, or any parent or adult household member may seek relief underthis section on behalf of any other family or household member, by filinga petition with the court. The petition shall contain or state:
 {¶ 3} In the first assignment of error, Traci claims that the trial court's findings are against the manifest weight of the evidence. The decision whether to grant a CPO is within the sound discretion of the trial court. Parrish v. Parrish (2002), 95 Ohio St.3d 1201, 765 N.E.2d 359. To grant a CPO, the trial court must find by a preponderance of the evidence that he/she or his/her family or household members are in danger of domestic violence. Felton v. Felton (1997), 79 Ohio St.3d 34,679 N.E.2d 672. This requires that the jurisdictional allegations made in the petition be proven by the petitioner.
 {¶ 4} In this case, Christopher alleged in his petition that he was related to Traci by marriage and that he had resided with Traci as required by R.C. 3113.31(A)(3). See CPO Petition. This allegation of prior residence was sufficient for the trial court to have jurisdiction to grant the ex parte order. However, no evidence was presented at the hearing to support that allegation. Although there is no time frame placed upon when the petitioner's residence with the respondent may have occurred, the statute does require that the petitioner have resided with the respondent at some point in time. See State v. Mrus (1991),71 Ohio App.3d 828, 595 N.E.2d 460 (holding that residential requirement does not have a time frame, overruled on other grounds), State v. Poling
(May 20, 1998), Shelby App. No. 17-97-26, unreported (holding that family members include children of the offenders so long as the parties have resided together in the past) and Maglionico v. Maglionico, 11th Dist. No. 2000-P-0115, 2001-Ohio-8901 (holding that lacking elements of proof that the petitioner and the respondent currently or have previously resided together is a failure of proof for a domestic violence CPO). See also State v. Williams (1997), 79 Ohio St.3d 459, 683 N.E.2d 1126
(holding that the offense of domestic violence arises out of the circumstances of the relationship, not merely the residential circumstances, and deleting the residency requirement for domestic violence statutes if there are shared familial or financial responsibilities and consortium).
 {¶ 5} There is testimony that Christopher is Traci's brother-in-law and Stephanie's uncle, which satisfies the traditional familial relationship by affinity. However, there was no evidence presented that indicated that Christopher ever resided with Traci. The testimony of the parties is that Traci and Christopher had little contact with each other over the years and that in general avoided each other. Thus, no evidence was presented that would indicate that the two shared any familial or financial responsibilities.[4] The record is lacking any evidence indicating that Christopher is a family member as specifically defined by this statute, R.C. 3113.31(A)(3). Additionally, the circumstances in this case do not fit in with the definition of family member as set forth by the Ohio Supreme Court for the purpose of the domestic violence statute. As a result, Christopher is not authorized by the statute to bring a petition for a domestic violence CPO on behalf of Stephanie. R.C. 3113.31(C).
 {¶ 6} The trial court is also required to find that Traci placed Stephanie in fear of imminent, serious physical harm.[5] R.C.3113.31(A)(1)(b). The only evidence before the trial court as to Stephanie's state of mind was the statements made by Stephanie in camera that she was not now and never had been in fear that her mother would harm her. Stephanie even stated that she was not afraid upon the occasion in question, but rather was angry at her mother because they were arguing and yelling at each other at the time. Stephanie stated that she was not afraid of her mother even though she knew that her mother had attempted to purchase a gun. She stated that her mother had never threatened her at any previous time and had never struck her on any occasion. The magistrate made a finding that Stephanie was not in fear of imminent serious physical harm. The magistrate then proceeded to make a finding that Stephanie just did not appreciate the danger because she was a minor and should have been in fear. Although this finding may be appropriate, it must be supported by some evidence.
 {¶ 7} The magistrate in this case made a finding that Stephanie was evidently not competent to know when to be afraid. At the time of the incident, Stephanie was fourteen years old. When she spoke with the magistrate, she was almost fifteen years old. There was no evidence presented that Stephanie was too young or immature to understand the situation. To the contrary, the magistrate found that Stephanie was a "bright, bubbly teenager." Without some evidence to indicate that Stephanie did not understand the situation, the magistrate's findings that she should have been afraid are purely speculative. The magistrate even admits that if Stephanie were 18, the standard would be wholly subjective. However, because Stephanie is a juvenile, the magistrate decided that she should have been in fear of imminent serious physical harm. As stated above, without evidence from which to determine that Stephanie's judgment was impaired by her age, this finding is speculative and the judgment based on it is an abuse of discretion. The first assignment of error is sustained.
 {¶ 8} The second assignment of error claims that Christopher lacks the standing to file for a CPO on behalf of Stephanie. Christopher is the paternal uncle of Stephanie. He has never claimed to have resided in the household with Traci and Stephanie. In order to have standing to file on behalf of Stephanie, Christopher must have previously resided with Traci. R.C. 3113.31(C). Since he has not resided with the respondent, Christopher does not meet the statutory definition of family or household member set forth in R.C. 3113.31(A)(3). Thus, Christopher has no standing to bring the petition for a CPO. An appropriate vehicle for this action could have been for Christopher to report his concerns about Stephanie's safety to the county children service's agency. That agency is required by statute to investigate the claims and, in appropriate circumstances, place Stephanie in shelter care with an appropriate relative or elsewhere. By proceeding by a petition for a CPO in the general division of the common pleas court, the jurisdiction of the juvenile division and all attendant due process requirements set in place by statute for that court to protect both the interests of children and the custodial rights of parents are evaded. The second assignment of error is sustained.
 {¶ 9} The judgment of the Court of Common Pleas of Crawford County is reversed and remanded.
Judgment reversed and Cause remanded.
Walters and Shaw, JJ., concur.
[1] Christopher is not the husband of the aunt with whom Stephanie was staying. Prior to the ex parte order granting the CPO, Stephanie had never resided with Christopher. Christopher informed Stephanie that she could not have any contact with Traci, including phone calls.
[2] Stephanie's date of birth is December 2, 1987.
[3] Testimony was presented that Traci had never threatened physical harm to Stephanie, physically harmed Stephanie, or even used corporal punishment. The testimony, as presented by Christopher, was that Traci had told him on two prior occasions that she was considering getting treatment because she was having suicidal thoughts.
[4] No allegation of consortium was made.
[5] This court notes that Traci pled guilty to menacing, which is defined as "knowingly cause another to believe the offender will cause physical harm to the person or property of the other person * * *." R.C.2903.22. The elements of this offense do not require a fear of imminent serious physical harm to the person as is required by R.C. 3113.31. Thus, the conviction of menacing alone is insufficient grounds for granting the CPO in this case.