[Cite as *Estrada v. Inman*, 2024-Ohio-1390.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| SARAH ESTRADA | : | |
| | : | |
| Appellee | : | C.A. No. 29977 |
| | : | |
| v. | : | Trial Court Case No. 2023 DV 00194 |
| | : | |
| DOUGLAS INMAN | : | (Appeal from Common Pleas Court- |
| | : | Domestic Relations) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on April 12, 2024

. . . . . . . . . . .

CHRISTOPHER L. TROLINGER, Attorney for Appellant

MICKENZIE R. GRUBB, Attorney for Appellee

. . . . . . . . . . . . .

HUFFMAN, J.

{¶ 1} Respondent-Appellant Douglas Inman appeals from the trial court's judgment granting a domestic violence civil protection order in favor of Petitioner-Appellee Sarah Estrada. For the reasons outlined below, we affirm the judgment of the trial court.

**I.     Factual and Procedural Background**

{¶ 2} According to Appellee's testimony at the hearing before the magistrate on her petition for a domestic violence civil protection order, the parties in this matter were

married and had two children. In 2015, prior to their divorce, Appellant grabbed Appellee by the throat and threatened to kill her and take their children. The parties reconciled after that incident but later divorced in Hamilton County Domestic Relations Court in January 2018.

{¶ 3} During the COVID-19 pandemic, Appellant had limited contact with Appellee and the children; he had infrequent parenting visits over approximately two years, and the parties did not following the parenting time schedule. In October 2022, Appellee sought to relocate and modify the parenting time order in the Hamilton County court.

{¶ 4} In February 2023, when the parties appeared in Hamilton County on the post-decree motion regarding parenting time, Appellant was argumentative and stared at Appellee during the hearing. After the hearing concluded, Appellee spoke to her attorney in the courtroom and waited for approximately 15 minutes to leave in an effort to ensure that she and Appellant would not cross paths leaving the courthouse. Appellee eventually exited the building, went to her car, and then texted her attorney to inform the attorney that she was safely in her car and was leaving with plans to meet a friend for lunch. She then drove away, heading west toward Western Hills. While driving, she noticed that Appellant was following her. She became scared and nervous and took a picture of his car. She also noticed that he changed lanes as she did, so she decided to drive to the nearest police station and called the police from her cell phone. Appellant followed her there. The police advised Appellee that, if she desired a protection order, she would need to seek one in Montgomery County, where she lived.

{¶ 5} Appellee then filed a petition for a domestic violence civil protection order

against Appellant in Montgomery County on February 10, 2023. That same day, the trial court granted an ex parte temporary civil protection order, ordering Appellant to stay away from Appellee and to not be within 500 feet of her. The full hearing on the petition was scheduled for February 27, 2023, but was postponed due to a weather event; the hearing was rescheduled for May 15, 2023.

{¶ 6} On April 11, 2023, Appellee filed a motion to show cause, alleging that, instead of having his mother facilitate the parenting time exchange, Appellant intentionally showed up for the exchange despite the court's ex parte order and failed to stay 500 feet away from Appellee in an effort to intimidate her and put her in an unsafe position.

{¶ 7} Appellant's petition proceeded to a hearing before the magistrate on May 15, 2023, during which both parties testified.

{¶ 8} According to Appellee's additional testimony at the hearing, after the ex parte order was issued, the parties used the parenting application, AppClose. Appellant first messaged through AppClose on February 10, 2023, and then messaged again on February 11. On February 12, Appellant sent a message to Appellee at 11:58 a.m. and then messaged her that same day another 17 times. Appellant then sent nine messages on February 13, nine messages on February 14, nine messages on February 15, and three messages on February 16. In his multiple messages to Appellee, Appellant appeared to become more and more frustrated with what he believed was Appellee's unwillingness to communicate with him. Appellant's messages were demanding and argumentative, but he did not explicitly threaten Appellee. Thereafter, Appellant had the children for visitation and was supposed to return them at their designated location but,

instead, he took them to Appellee's home, causing her to become fearful and contact her therapist.

**{¶ 9}** Appellee also testified that Appellant's past and recent behavior had been intimidating and unpredictable. Appellee sought the protection order because Appellant's threatening behavior was escalating and "ramping up again" as it had in the past, causing her to feel unsafe all over again given their history. Appellee testified that Appellant's behavior escalates in a cycle and that the cycle had started again, as Appellant had followed her in his car after the parenting time hearing, was angrily texting her, and was ignoring the ex parte order.

**{¶ 10}** During the hearing, Appellant was argumentative, and his demeanor was hostile. The magistrate admonished Appellant for staring at Appellee, making faces at her, and laughing at her testimony, resulting in a recess. Appellant initially denied ever grabbing Appellee's throat in 2015 or 2016 but then said that he could not recall. With respect to the incident in which he followed Appellee in his car, he testified that, when he was driving home from the parenting time hearing, he noticed Appellee's car pull in front of him, so he, too, decided to drive to the nearest police station to have witnesses and to ask about obtaining a protection order against Appellee.

**{¶ 11}** On July 11, 2023, the magistrate issued a decision granting Appellee's petition for a protection order for a period of two years. Based on the parties' testimony, the magistrate found that, even though the 2015 incident took place eight years prior to Appellee's filing her petition, that incident had colored all future interactions between the parties. The magistrate found that Appellant's actions during and after the parenting time

hearing (when he followed Appellee) were concerning and did not find Appellant's explanation for following Appellee to the police station to be credible. The magistrate also found that Appellee credibly testified that she had seen Appellant's behaviors before and that she was genuinely afraid and believed his actions were "escalating." The magistrate concluded that Appellant's actions during and after the parenting time hearing, his incessant texting, his argumentative posture toward Appellee, and his demeanor in court suggested that his actions were escalating and that he posed a threat to the safety of Appellee. The magistrate explained that, although Appellant's actions alone would generally not be enough to grant a protection order, his escalating actions, coupled with Appellant's having grabbed Appellee by the throat and threatened to kill her in 2015, indicated that Appellant posed a significant risk to Appellee's safety.

{¶ 12} Appellant timely filed his objections to the magistrate's decision on July 24, 2023. On October 23, 2023, the trial court issued its decision overruling Appellant's objections and ordered that the two-year protection order granted by the magistrate remain in effect. In its decision and judgment, the court stated that the parties had had a problematic relationship in past years, resulting in the domestic violence incident in 2015. The court stated that Appellant's communication with Appellee through AppClose had been antagonistic and badgering. The court noted that the magistrate had admonished Appellant's intimidating behavior during the hearing, resulting in a recess, and had found that Appellee credibly testified that Appellant followed her in his vehicle following the parenting time hearing. The court further noted that Appellee had testified that she was afraid of Appellant and was visibly shaken at the hearing. In finding that Appellee met her

burden of proof for the civil protection order, the court explained that it was reasonable for Appellee to be in fear of Appellant based on the totality of the circumstances, specifically noting Appellant's badgering and voluminous texts and the prior incidents in which Appellant had grabbed Appellee by the neck and threatened to kill her and had followed Appellee in his car.

{¶ 13} Appellant timely filed his notice of appeal.

## II.     Assignments of Error

{¶ 14} Appellant asserts the following two assignments of error:

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION AS THE GRANTING OF A CIVIL PROTECTION ORDER WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN GRANTING A CIVIL PROTECTION ORDER AS THERE WAS NO EVIDENCE OF THREATS OF FORCE OR COMMITTING A VIOLATION OF R.C. 2903.211 OR 2911.211.

{¶ 15} Appellant argues that the trial court's decision to grant the petition for a civil protection order was not supported by the record and was against the manifest weight of the evidence. Appellant asserts that no threats were made against Appellee and the only act of alleged domestic violence occurred in 2015. Appellant also argues that his actions were not threatening and thus failed to establish any threats of domestic violence. We will consider Appellant's assignments of error together.

{¶ 16} "The decision whether to grant a protection order is within the sound

discretion of the trial court and will not be reversed absent an abuse of that discretion." *Parrish v. Parrish,* 95 Ohio St.3d 1201, 765 N.E.2d 359 (2002), citing *Albers v. Albers*, 2d Dist. Greene No. 2011-CA-60, 2012-Ohio-3838, ¶ 11. To constitute an abuse of discretion, a trial court's action must be arbitrary, unreasonable, or unconscionable. *Ojalvo v. Bd. of Trustees of Ohio State Univ.*, 12 Ohio St.3d 230, 232, 466 N.E.2d 875 (1984). When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993). Rather, a reviewing court "must be guided by a presumption that the findings of the trial court are correct." *Focke v. Focke*, 83 Ohio App.3d 552, 555, 615 N.E.2d 327 (2d Dist.1992).

{¶ 17} To obtain a civil protection order, "a petitioner must demonstrate by a preponderance of the evidence that the persons seeking protection are in danger of domestic violence." *Tyler v. Tyler*, 2d Dist. Montgomery No. 26875, 2016-Ohio-7419, ¶ 18, citing *Felton v. Felton,* 79 Ohio St.3d 34, 679 N.E.2d 672 (1997), paragraph two of the syllabus. "Domestic violence" against a family or household member means "(i) attempting to cause or recklessly causing bodily injury, (ii) *placing another person by the threat of force in fear of imminent serious physical harm, or committing either menacing by stalking or aggravated trespass*, (iii) committing any act with respect to a child that would result in the child being an abused child, or (iv) committing a sexually oriented offense." (Emphasis added.) R.C. 3113.31(A)(1). "The statutory criterion to determine whether or not to grant a civil protection order pursuant to R.C. 3113.31 is the existence or threatened existence of domestic violence." *Tyler* at ¶ 18, quoting *Thomas v.*

*Thomas,* 44 Ohio App.3d 6, 8, 540 N.E.2d 745 (10th Dist.1988). Contrary to the arguments of Appellant, explicit threats of domestic violence are not required in order to support the issuance of a civil protection order. Instead, statements, conduct, and actions, taken with all surrounding facts and circumstances, can constitute a threat. *See J.S. v. L.S.,* 10th Dist. Franklin No. 20AP-571, 2022-Ohio-2485.

{¶ 18} As used in R.C. 3113.31, " 'imminence' does not require an offender to carry out a threat immediately, or be in the process of carrying it out." *Tyler* at ¶ 21, citing *Strong v. Bauman,* 2d Dist. Montgomery Nos. 17256, 17414, 1999 WL 317432, *4 (May 21, 1999). "[T]he critical inquiry under the statute is whether a reasonable person would be placed in fear of imminent (in the sense of unconditional, non-contingent), serious physical harm. This inquiry necessarily involves both subjective and objective elements. * * * Therefore, we must determine whether [the petitioner] * * * had a reasonable belief that * * * [the offender] would cause her imminent, serious physical harm." *Id.,* quoting *Strong v. Bauman*, 2d Dist. Montgomery No. 17256, 1999 WL 317432, *4 (May 21, 1999).

{¶ 19} Civil protection orders are intended to prevent violence before it happens. *Id.*. Although no part of R.C. 3113.31 refers to the consideration of past acts of domestic violence in present cases, "courts have held that it is permissible in certain circumstances for a court to consider past behaviors when determining whether there is a present threat of domestic violence" because "in a situation where the alleged offending act is one that places the assumed victim in fear of harm, '[t]he fear * * * and the reasonableness of that fear could and should be determined with reference to [a petitioner's] history with [the respondent].' " *Id.* at ¶ 20, citing *Eichenberger v. Eichenberger,* 82 Ohio App.3d 809, 816,

613 N.E.2d 678 (10th Dist.1992). In *Parrish*, 95 Ohio St. 3d 1201, 1207-08, 765 N.E.2d 359, the Supreme Court of Ohio stated, in commenting upon the dynamic of domestic violence:

> Courts cannot look at incidents of domestic violence in a vacuum. Domestic violence is almost always a series of incidents that gradually escalate into increasing acts of brutality, repeating themselves in cycles. Thus, in a petition for a civil protection order, evidence of respondent's prior acts of violence toward the petitioner or the respondent's family or other household members should be admissible to prove by a preponderance of the evidence that petitioner and her children are in danger of domestic violence.

{¶ 20} In the instant matter, Appellee filed the petition for protection after Appellant became increasingly argumentative and visibly angry and followed her in his car after the parenting time hearing. The parties had been divorced for approximately five years following an incident in which Appellant grabbed Appellee by the throat and threatened to kill her, and Appellee recognized Appellant's behavior as escalating in a similar fashion as she had previously experienced from him, resulting in an act of domestic violence. Appellee had the burden of proving by a preponderance of the evidence that she was placed in fear of imminent serious physical harm and thus was entitled to the protection order. R.C. 3113.31(A)(1)(a)(ii); *see Felton,* 79 Ohio St.3d 34, 679 N.E.2d 672, at paragraph two of the syllabus. Resolving that issue here requires us to decide whether there was sufficient credible evidence to support the finding that Appellant had engaged in acts or threats of domestic violence, thereby entitling Appellee to a protection order.

{¶ 21} The trial court specified several grounds upon which it determined that Appellee had been placed in fear of imminent serious physical harm by the threat of force and, thus, that Appellant had engaged in acts or threats of domestic violence: (1) the parties' problematic relationship in past years, resulting in the domestic violence incident in 2015; (2) Appellant's antagonistic and badgering communication with Appellee through AppClose; (3) Appellant's intimidating behavior during the hearing resulting in the magistrate's admonishment and taking a recess; (4) Appellant's escalating actions and behavior; (5) Appellee's visible fear and shakiness at the hearing; and (6) Appellee's credible testimony that Appellant had followed her in his vehicle after the parenting time hearing.

{¶ 22} As set forth above, the critical inquiries here, involving both subjective and objective elements, were whether a reasonable person would have been placed in fear of imminent serious physical harm and whether the trial court abused its discretion in finding there was sufficient credible evidence that Appellee had a reasonable belief that Appellant would cause her imminent serious physical harm. In finding that Appellee met her burden of proof for the civil protection order, the trial court explained that it had been reasonable for Appellee to be in fear of Appellant based on the totality of the circumstances. We agree.

{¶ 23} The magistrate found Appellee's testimony to be the most credible. Appellee testified that she had observed Appellant's past behaviors and that she was genuinely afraid upon filing the petition for a protection order, believing that his actions were "escalating" as they had in the past. She described how Appellant's past and most

recent behavior was intimidating and unpredictable, causing her to feel unsafe all over again given Appellant's history of choking and threatening her and emphasizing that Appellant's behavior escalates in a cycle and that the cycle had started again. Because the trial court was in the best position to view the witnesses and observe their demeanor when weighing the credibility of their testimony, we give deference to its findings. *Abuhamda-Sliman v. Sliman*, 8th Dist. Cuyahoga No. 85174, 2005-Ohio-2836, ¶ 13, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 79-80, 461 N.E.2d 1273 (1984). Appellee's testimony regarding Appellant's history of violence directed toward her, his escalating angry behavior, and his following her in his car after the parenting time hearing supported the trial court's conclusion that substantial competent and credible evidence was presented that Appellant had placed Appellee in fear of imminent serious physical harm.

{¶ 24} Finally, we agree with the trial court that Appellant's actions during and after the parenting time hearing, his incessant texting, his argumentative posture toward Appellee, and his demeanor in court suggested that his actions were escalating and that he posed a threat to the safety of Appellee. As stated in *Parrish*, "domestic violence is almost always a series of incidents that gradually escalate into increasing acts of brutality, repeating themselves in cycles." Based on our review of the record, and considering the substantial evidence of Appellant's prior acts of violence toward Appellee, his escalating behavior, and all of the facts and circumstances surrounding his statements, conduct and actions, we conclude that Appellant placed Appellee, by the threat of force, in fear of imminent serious physical harm, and that not only would a reasonable person be placed

in fear of imminent serious physical harm based on Appellant's threats, but that Appellee sufficiently demonstrated that she had a reasonable belief that Appellant would cause her imminent serious physical harm.

{¶ 25} Accordingly, we conclude that the trial court did not abuse its discretion in granting the civil protection order, and Appellant's assignments of error are overruled.

### III.    Conclusion

{¶ 26} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, P.J. and TUCKER, J., concur.