[Cite as *State v. Jennings*, 2025-Ohio-5790.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
HARRISON COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

RICHARD L. JENNINGS, JR.,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 25 HA 0001

---

Criminal Appeal from the
Harrison County Court, of Harrison County, Ohio
Case No. CRB - 24-00145

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Lauren E. Knight*, Harrison County Prosecutor and *Atty. Jack L. Felgenhauer*, Assistant County Prosecutor, for Plaintiff-Appellee

*Atty. R. Aaron Miller*, for Defendant-Appellant

Dated:  December 29, 2025

_____

**WAITE, J.**

**{¶1}** Appellant Richard L. Jennings, Jr. was convicted of one count of domestic violence. He argues on appeal that the evidence does not support the conviction. The record shows that he attacked his son (the victim) at the son's home, that he made threats, that his son showed fear and apprehension, and that his son believed Appellant would inflict imminent bodily harm. Appellant's conviction is fully supported by the record, and the judgment of the trial court is affirmed.

Facts and Procedural History

**{¶2}** On July 10, 2024 the police were called to Appellant's home in St. Clairsville in Belmont County due to an altercation between Appellant and his wife. Appellant's son ("Son"), C.J., intervened in the dispute and took Appellant's wife (C.J.'s Mother) to his home near New Athens in Harrison County. Son resides there with his own wife and their two minor children. Although the St. Clairsville Police told Appellant that he must keep away from his wife and not go to his Son's house, he immediately drove to Son's house. While en route, Appellant called Son's cell phone and asked to speak with Mother. Son would not allow it. Appellant then said he was on his way to Son's house and was almost there. Son told him not to come, that he was not welcome, and that he would call the police if Appellant came to the house. Son then asked his wife to call 911 because he knew, based on his recent interactions with Appellant, there would be a fight if Appellant arrived. Son's wife told the police that the disturbance that started in St. Clairsville had moved to her home in Harrison County.

Case No. 25 HA 0001

{¶3}    Son moved his truck to block Appellant from entering his driveway.  He went back inside the house where he and his family waited for the police.  Appellant arrived and parked in the ditch at the end of the driveway.  He walked around the truck blocking the driveway and continued toward the house.  Son did not see Appellant until he was three-fourths of the way to the house.  Appellant approached Son's home in a hostile manner, with clenched fists.  Son's wife was still on the phone with the police when Appellant arrived.  Son opened the door and told Appellant that he was not welcome there.  Appellant continued onto the porch and Son pushed him away.  Son continued to tell Appellant to leave, but Appellant attempted to force himself inside four or five times.  Son continued to block the entrance to the house to prevent Appellant from getting inside, finally knocking Appellant to the ground.  Appellant told Son "I'm going to see her. . . . I'm not going nowhere. . . . I'll be back and I'll have friends with me."  (6/5/25 Tr., p. 12.)

{¶4}    As a result, Appellant was charged with domestic violence in two separate cases, one alleging domestic violence against Son (24CRB145) and the other for the earlier incident, alleging domestic violence against Mother (24CRB146).  The charges were fourth degree misdemeanors, R.C. 2919.25(C).

{¶5}    The bench trial took place on June 5, 2025 in the County Court of Harrison County.  Son testified in conformity with the information he gave to the police.  On July 10, 2024 Appellant was at home in Belmont County and was engaged in a domestic dispute with his wife, Son's Mother.  The police were called to intervene.  Son arrived at the scene and intervened by taking Mother to his house in Harrison County.  After Son arrived back at his home, Appellant called him on his cell phone.  Appellant told Son he was heading to Son's home and that he would be there momentarily.  Son told Appellant

not to come to his house and that he was not welcome there. Son asked his wife to call the police. Appellant arrived at Son's house shortly after and rushed at him with his fists raised. Appellant "came at" Son four or five times. Son rebuffed him and finally knocked him to the ground. As Appellant was leaving he threatened to come back with friends. Son testified that he was in fear of Appellant when Appellant arrived at house. (6/5/25 Tr., p. 12.)

{¶6}    Son's wife testified that she felt unsafe when she learned Appellant was headed to her house. She called the police because she knew the situation would escalate verbally and physically once Appellant arrived. She said she had experienced this type of situation with Appellant before. Appellant arrived while she was still on the phone with the 911 dispatcher. She saw Appellant charging on foot toward their porch. Appellant was almost at the porch when Son left the kitchen and approached Appellant. She heard Son say that Appellant was not welcome there, to get off the porch, and that the police told him not to come. She heard Appellant say "That's my wife. You're not going to stop me." (6/5/25 Tr., p. 25.) Appellant raised his arms at Son, and Son pushed him back. This occurred several times, and Son eventually pushed Appellant to the ground. After Appellant stood up again, Son told him not to come back. As Appellant walked back to his car he said, "I'll be back. I've got people. I'll be back." (6/5/25 Tr., p. 27.) Son's wife believed Appellant was going to return immediately with more people to continue the fight. She testified that Appellant had threatened to shoot Son on multiple occasions over the past ten years. She testified that she was in fear of her safety and her husband's safety. (6/5/25 Tr., p. 27.)

{¶7} Harrison County Sheriff's Deputy Huffman testified that he was dispatched to Son's home at about 5:00 p.m. on July 10, 2024 in response to an active domestic violence incident. He testified that Deputy Anthony Sedgmer arrived at the scene first. Appellant had already left the property. Dep. Huffman described Son and Son's wife as being in an agitated state. Dep. Huffman stated that he later took custody of Appellant from the St. Clairsville Police where he was initially detained.

{¶8} Harrison County Sheriff's Deputy Anthony Sedgmer testified that he was dispatched to Son's home for a potential domestic dispute, and while en route was told it had become an active incident. He was the first police officer to arrive. Appellant was not at the house when Dep. Sedgmer arrived. Dep. Sedgmer talked to Son in the driveway. Son was very distraught and upset. Dep. Sedgmer took Son's statement. Son told him that Son talked to Appellant on the phone and told Appellant he was not welcome, and not to come to the house. Appellant responded by saying that he was going to talk to his wife one way or another. Son told Dep. Sedgmer that Appellant was making threats. (6/5/25 Tr., p. 55.) He testified that both Son and his wife said they were in fear of their safety because of Appellant. (6/5/25 Tr., pp. 54-56.) He testified that he spoke with Appellant at the Harrison County Jail. Appellant admitted going to Son's house after he was told by both the police and Son not to go. Appellant denied making threats or hitting Son.

{¶9} The court found Appellant guilty of domestic violence against Son in Case No. 24CRB145, a fourth degree misdemeanor. The court sentenced Appellant to 30 days in jail with 23 days suspended, 18 months of probation, and ordered an anger management course. Appellant was to have no contact with the victim and terms of a

protection order were imposed. The final judgment was filed on June 5, 2025. Appellant filed a notice of appeal on July 3, 2025. He raises one assignment of error on appeal.

ASSIGNMENT OF ERROR

THE TRIAL COURT COMMITTED ERROR BECAUSE THE CONVICTION OF THE APPELLANT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶10}** Appellant argues that the verdict is against the manifest weight of the evidence. Appellant argues that in order to be convicted of domestic violence pursuant to R.C. 2919.25(C), the perpetrator must have knowingly caused a victim to believe that the perpetrator will cause imminent bodily harm. Appellant contends the evidence does not prove that Son thought bodily harm was imminent. Appellant contends there were no threats made, and even if there were, Son could not rightfully believe the threats of harm were imminent.

**{¶11}** Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." (Emphasis deleted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387. It is not a question of mathematics, but depends on the overall effect of the evidence in inducing belief. *Id.* Weight of the evidence involves the state's burden of persuasion. *Id.* at 390. (Cook, J. concurring). An appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Lang*, 2011-Ohio-

4215, ¶ 220, citing *Thompkins* at 387. This discretionary power of an appellate court to reverse a conviction is to be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *Id.*

**{¶12}** "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. Hunter*, 2011-Ohio-6524, ¶ 118, quoting *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. "The trier of fact is in the best position to weigh the evidence and judge the witnesses' credibility by observing their gestures, voice inflections, and demeanor." *State v. Vaughn*, 2022-Ohio-3615, ¶ 16 (7th Dist.), citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

**{¶13}** Appellant was charged with one count of domestic violence pursuant to R.C. 2919.25(C), which states: "No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member." The record reflects that Appellant made threats and showed that he was prepared to use force, and in fact did use force, to try to get into Son's house. (6/5/25 Tr., pp. 17, 18, 55.) Appellant charged at Son four or five times with clenched fists and raised arms, but Son stopped him each time, eventually pushing Appellant to the ground. Although Appellant argues that he did not threaten Son, the record specifically supports that threats were made, and were confirmed by his actions. Further, a "threat need not be verbalized; rather the threat can be implied by the offender's actions." *State v. Taylor*, 2019-Ohio-142, ¶ 83 (2d Dist.), citing *State v. Terzo*, 2003-Ohio-5983, ¶ 18 (12th Dist.). Proof of the defendant's statements, conduct, and other actions can support the "threat" element of domestic violence. *S.E. v. D.I.*, 2024-Ohio-1390, ¶ 17 (2d Dist.). Son testified that "[h]is actions were the threat." (6/5/25 Tr., p. 18.) Appellant's

acts of charging at Son, showing his fists and raising his arms, coupled with prior verbal threats that he would shoot Son, can be taken together as a threat of imminent harm. Additionally, after Appellant failed to get into Son's house by direct action, he threatened to return with more people.

{¶14} Appellant also made what can be characterized as a threat to the St. Clairsville Police. The record reveals that the St. Clairsville Police were called to Appellant's home in St. Clairsville just a few minutes before the incident at Son's house. The St. Clairsville police told Appellant they were separating Appellant and his wife, Appellant was not to talk to his wife, and that he must not go to Son's house. (6/5/25 Tr., p. 59.) Despite their admonishment, Appellant told the St. Clairsville Police that "he would end up in jail or in the grave that night." (6/5/25 Tr., p. 59.)

{¶15} Appellant argues the evidence does not prove that the victim, Son, was afraid Appellant would cause imminent physical harm to him. Appellant acknowledges that Son testified he was afraid of Appellant, but Appellant argues that the fear arose from unspecified past behavior from the victim's childhood. Appellant points out that he was in a neck brace when he approached Son, and that Son is an ex-Marine. Appellant does not believe Son could have been afraid of him in these circumstances, and argues that there was no credible or reliable proof that the victim was afraid of Appellant.

{¶16} Evidence of the defendant's past behavior "can be used to establish the basis of the victim's belief that the offender is about to cause imminent physical harm, an element of this crime." *State v. Collie*, 108 Ohio App.3d 580, 584 (1st Dist. 1996); *S.E. v. D.I.* at ¶ 19. "Domestic violence is almost always a series of incidents that gradually escalate into increasing acts of brutality, repeating themselves in cycles." *Morris v.*

*Morris*, 2009-Ohio-5164, ¶ 23 (9th Dist.). Son testified that Appellant was very abusive and demeaning towards him during his childhood. (6/5/25 Tr., p. 13.) Son's wife testified that Appellant told Son many times that he would shoot him. (6/5/25 Tr., p. 28.) Although Appellant argues that this evidence does not show an attack was imminent, it can be used to support other evidence of an imminent threat. The evidence of Appellant's history of violence with Son was also admitted to show Son's state of mind. He feared for his own safety, knowing that Appellant had acted violently and had threatened to hurt him in the past.

**{¶17}** A great deal of Appellant's argument relates to whether the state proved Son was actually afraid of Appellant, but proof of the victim's fear is not an element of domestic violence in R.C. 2919.25(C). *State v. Schweitzer*, 2015-Ohio-925, ¶ 38 (3d Dist.) (domestic violence conviction upheld even though victim testified she was not in fear of the defendant). This is not a civil protection order case in which proof of "fear of imminent serious physical harm" is necessary. R.C. 3113.31(A)(1). This is a criminal domestic violence case. The state needed to prove that the victim believed Appellant would cause imminent bodily harm. R.C. 2919.25(C). Although the victim's state of mind is an essential element in R.C. 2919.25(C), fearfulness is not an essential element. *State v. Denis*, 117 Ohio App.3d 442, 447 (6th Dist. 1997). "R.C. 2919.25(C) has no element that the victim fear physical harm. Rather, the statute requires only that the defendant's actions cause the victim to believe imminent physical harm will occur." *State v. Marshall*, 2017-Ohio-9269, ¶ 17 (12th Dist.).

**{¶18}** A person's beliefs, or state of mind, can be shown through the victim's statements, may be inferred from other evidence, or may be shown through the totality of

circumstances. *State v. Yantis*, 2023-Ohio-3820, ¶ 15 (2d Dist.). Son's belief that bodily harm was imminent was shown in several ways. Appellant's crime occurred just after Appellant engaged in a domestic incident that required Son to remove Mother from the situation and take her to his own house. The two deputies indicated that Son was agitated, upset, and distraught. Many of Son's actions show that he was preparing for an imminent threat of harm from Appellant: he asked his wife to immediately call the police, blocked the entry to his house with his truck, and gathered his family in the house to wait for the police to arrive. Contacting the police is evidence of the victim's belief that physical harm is imminent. *Morris v. Morris*, 2009-Ohio-5164, ¶ 22 (9th Dist.). Son also testified that he believed Appellant was coming to his house to fight. He testified that Appellant said, "You're not going to stop me" and "I'm coming through." (6/5/25 Tr., p. 18.) Son said he saw Appellant coming towards him in a hostile manner with clenched fists. Son testified that he interpreted all of Appellant's actions at his home as threatening. Son's wife also testified that Appellant rushed at Son with raised arms. The evidence amply supports that Son believed harm was imminent.

{¶19} Even if we could agree with Appellant that the state needed to prove Son was subjectively afraid, the record provides this proof. Son specifically testified that he was afraid when Appellant approached the house. "I was [in] fear for what he might try to do to me, my wife and my mom, the danger, the harm that he could put all three in." (6/5/25 Tr., p. 12.) Son and his wife told Dep. Sedgmer that they were afraid. Son's actions throughout the incident are consistent with someone who is fearful. This was a bench trial, and the judge, as trier-of-fact, was free to believe or disbelieve these statements about Son's fear. *State v. Wright*, 2024-Ohio-5905, ¶ 16 (7th Dist.). The state

Case No. 25 HA 0001

proved that Appellant made threats of imminent physical harm, that Son believed those threats, and that Son was afraid of Appellant who undertook threatening actions at Son's house. Appellant's arguments are unpersuasive and the assignment of error is overruled.

## Conclusion

{¶20} Appellant challenges his conviction for one misdemeanor count of domestic violence. He argues that the manifest weight of the evidence does not support the conviction. The record reveals that Appellant was in a domestic dispute with his wife, that his Son took his Mother away from the situation and went to his own house in Harrison County, and that Appellant immediately followed, expressly violating police orders not to go to Son's house. When Appellant arrived, he lunged at Son with clenched fists and raised arms. Son held him off during four or five attacks. Son testified that he was afraid, and Son's actions were those of someone who expected to have to defend himself from an attack by Appellant. The manifest weight of the evidence supports that Son believed Appellant would inflict imminent bodily harm and that Appellant committed an act of domestic violence. Appellant's assignment of error is not supported by the record, and the judgment of the trial court is affirmed.

Robb, P.J. concurs.

Dickey, J. concurs.

Case No. 25 HA 0001

_____

For the reasons stated in the Opinion rendered herein, Appellant's assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Harrison County Court, of Harrison County, Ohio, is affirmed.  Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**